*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2017 UT 70**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee,*
*v.*

MICHAEL WADDELL JOHNSON,
*Appellant.*

No. 20140794
Filed October 3, 2017

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake
The Honorable Judith S. H. Atherton
No. 071900184

Attorneys:

Sean Reyes, Att'y Gen., Karen Klucznik, Asst. Solic. Gen.,
Salt Lake City, for appellee

Ronald Fujino, Salt Lake City for appellant

JUSTICE DURHAM authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, JUSTICE HIMONAS, and JUDGE KELLY joined.

ASSOCIATE CHIEF JUSTICE LEE authored a concurring opinion.

Having recused himself, JUSTICE PEARCE does not participate herein;
DISTRICT COURT JUDGE KEITH KELLY sat.

JUSTICE DURHAM, opinion of the Court:

## INTRODUCTION

¶1   Michael Johnson was found guilty of murder for strangling a woman in her apartment. Mr. Johnson appealed his conviction. On appeal, the court of appeals identified an issue that was not argued by the parties and ordered supplemental briefing, ultimately reversing Mr. Johnson's conviction. We have granted certiorari

review to answer a single question: whether the court of appeals correctly concluded that exceptional circumstances merit review of an issue not preserved in the trial court and not argued on appeal. We hold that the exceptional circumstances exception to the preservation rule does not apply here, and we reverse the court of appeals and remand this case so that it may consider the appellant's other unaddressed claims of error.

## BACKGROUND

¶2    Michael Johnson was charged and tried for murder. At trial, Mr. Johnson requested an instruction for the lesser offense of homicide by assault. The trial court agreed and stated on the record that it would use the homicide by assault instruction submitted by Mr. Johnson.

¶3    The jury returned a guilty verdict on the murder charge, and Mr. Johnson appealed his conviction to the court of appeals. He argued that his conviction should be reversed because the verdict form returned by the jury did not include an option to find him guilty of the lesser offense of homicide by assault[1] and that the jury instruction on causation was erroneous. *State v. Johnson*, 2014 UT App 161, ¶ 11 & n.5, 330 P.3d 743.

¶4    The court of appeals asked for supplemental briefing on an issue that Mr. Johnson had not raised on appeal: whether the homicide by assault jury instruction was erroneous. *Id.* ¶¶ 12–13. After supplemental briefing, the court of appeals reversed Mr. Johnson's conviction based upon its conclusion that the homicide by assault instruction was erroneous, *id.* ¶ 29, with each judge on the three-member panel writing separately. The court acknowledged

---

[1] The signed, one-page verdict form found in the record makes no mention of the lesser offense of homicide by assault. The court of appeals granted the State's motion for a remand to the trial court to supplement the record regarding the verdict forms provided to the jury. *State v. Johnson*, 2014 UT App 161, ¶ 10, 330 P.3d 743. On remand, the trial court issued a minute entry stating that it was unable to find a homicide by assault verdict form in its files. *Id.* Although the verdict form no longer existed, "it [was] the court's recollection that the court created the lesser-included offense verdict form and sent the verdict form with the jury instructions with the jury when it was released to deliberate." *Id.* The trial court further stated that the jury may have left the separate homicide by assault verdict form in the jury room where it was later discarded by court staff. *Id.*

that Mr. Johnson never preserved an objection to the instruction and that Mr. Johnson likely invited the error by submitting the instruction to the court. *Id.* ¶ 14. The court of appeals decided, however, that the exceptional circumstances exception to the preservation rule permitted the court to examine the unpreserved and likely invited error. *Id.* ¶¶ 14–19. A majority of the panel reached this conclusion by determining that our decision in *State v. Robison*, 2006 UT 65, 147 P.3d 448, expanded the doctrine of exceptional circumstances. *Johnson*, 2014 UT App 161, ¶¶ 16–19, 30–31.

¶5 This court granted a petition for certiorari review of the court of appeals' opinion. We agreed to answer "[w]hether the majority of the panel of the court of appeals erred in its application of the exceptional circumstances doctrine to a case in which it acknowledged the error may have been invited and in which Respondent did not argue ineffective assistance of counsel."

## STANDARD OF REVIEW

¶6 We review the court of appeals' application of the preservation rule for correctness. *State v. McNeil*, 2016 UT 3, ¶ 14, 365 P.3d 699. "This standard of review allows us to apply the [appellate] doctrines at issue here as if we were the first appellate court to consider them." *Id.*

## ANALYSIS

### I. THE DIFFERENCE BETWEEN FAILURE TO PRESERVE AN ISSUE IN THE TRIAL COURT AND WAIVING AN ISSUE ON APPEAL

¶7 The court of appeals erred when it determined that *State v. Robison*, 2006 UT 65, 147 P.3d 448, extended the application of the exceptional circumstances exception to preservation. Given the ambiguity in our precedent, we undertake clarification of when an appellate court may reach an issue that was not preserved in the trial court, and when it may reach an issue *sua sponte* that was waived by the parties on appeal. We first discuss the historical background against which our rules of preservation and waiver developed, and then we address preservation and waiver and their respective exceptions. Finally, we apply these standards to the case before us.

### A. Writ of Error and Appeal in Equity

¶8 Our appellate system has developed along the adversarial model, which is founded on the premise that parties are in the best position to select and argue the issues most advantageous to themselves, while allowing an impartial tribunal to determine the merits of those arguments. *See Patterson v. Patterson*, 2011 UT 68,

¶ 16, 266 P.3d 828 ("Under our adversary system, the responsibility for detecting error is on the party asserting it, not on the court."); *State v. Larrabee*, 2013 UT 70, ¶ 15, 321 P.3d 1136. This system preserves judicial economy and fairness between the parties. *Patterson*, 2011 UT 68, ¶¶ 15–16.

¶9 Notwithstanding the dominance of this model, our system of appeals has roots in two separate and distinct methods of review available under the old English court system: the writ of error and the appeal in equity. The writ of error was used to review an order or judgment of an English court of law; an appeal in equity was used to review a ruling in a court of equity. Barry A. Miller, *Sua Sponte Appellate Rulings: When Courts Deprive Litigants of an Opportunity to Be Heard*, 39 SAN DIEGO L. REV. 1253, 1263 (2002). Writs of error were strictly limited to reviewing orders and judgments made by the court of law on issues raised in that court. *Id*. Conversely, "[a]ppellate courts in equity were free to consider any issue de novo" and "developed flexible procedures to address the needs of individual cases." *Id.*

¶10 While American courts have developed an appellate system with strict rules governing what issues an appellate court will address, thus more closely resembling the writ-of-error model, both the writ of error and the appeal in equity were consolidated into one set of appellate courts. *See id.* at 1264 (noting that the writ of error and appeal in equity were combined in U.S. appellate courts, with "[o]ne set of appellate courts administer[ing] both"); *Goldberg v. Jay Timmons & Assocs.*, 896 P.2d 1241, 1242 (Utah Ct. App. 1995) ("Historically, parties could bring actions in a court of law or a court of equity. For procedural purposes, the distinction between law and equity has been abolished and only 'one form of action . . . known as civil action,' remains." (alteration in original) (citations omitted)); *cf. Christensen & Jensen, P.C. v. Barrett & Daines*, 2008 UT 64, ¶ 20, 194 P.3d 931 (establishing standard of review for cases in equity as opposed to cases at law). This has created a system that, at times, appears to contain inherent conflicts and has given rise to a certain tension, if not murkiness, regarding preservation, waiver, and when a court may raise an issue *sua sponte*.

¶11 Our court's history in this regard is not unique. Appellate judges across the country have wrestled with the correct balance between law and equity and the scope of review on appeal. *See* Miller, *supra* ¶ 9 at 1271 (noting that despite a party's duty to raise issues, appellate judges raise issues *sua sponte* because they "also see their role as doing justice in the tradition of equity"). For instance, in one case the late Justice Antonin Scalia wrote, "[t]he rule that points

not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, distinguishes our adversary system of justice from the inquisitorial one." *United States v. Burke*, 504 U.S. 229, 246 (1992) (Scalia, J., concurring). Yet elsewhere he stated that "the refusal to consider arguments not raised is a sound prudential practice, rather than a statutory or constitutional mandate, and there are times when prudence dictates the contrary." *Davis v. United States*, 512 U.S. 452, 464 (1994) (Scalia, J., concurring).

¶12 Despite this historical tension between the two systems, and our general reliance on strict rules governing preservation and waiver, we have maintained that our waiver and preservation requirements are "self-imposed and [are] therefore [doctrines] of prudence rather than jurisdiction." *Patterson*, 2011 UT 68, ¶ 13. "Consequently, we exercise wide discretion when deciding whether to entertain or reject" issues that are unpreserved at trial or waived on appeal. *Id.*; *see also Salt Lake City v. Carrera*, 2015 UT 73, ¶ 17, 358 P.3d 1067 ("[W]e . . . retain discretion over whether to consider issues not raised by the parties."); *Utah Dep't of Transp. v. Admiral Beverage Corp.*, 2011 UT 62, ¶ 8, 275 P.3d 208 (raising the validity of precedent *sua sponte*). We retain this discretion to "balance the need for procedural regularity with the demands of fairness." *State v. Holgate*, 2000 UT 74, ¶ 13, 10 P.3d 346 (citation omitted).

> Regardless of whether the practice of appellate courts in raising issues sua sponte that have not been raised in the trial court is analyzed under the law versus equity model or the adversarial versus inquisitorial system model, there is widespread agreement that appellate courts have the authority to engage in this practice.

*Blumberg Assocs. Worldwide, Inc. v. Brown & Brown of Connecticut*, 84 A.3d 840, 859 (Conn. 2014).

¶13 In an effort to serve the policy considerations of judicial economy and fairness to the parties, to preserve the adversarial model, and to provide clear guidelines to litigants, we have limited our discretion by creating exceptions to the general preservation rule. *Patterson*, 2011 UT 68, ¶ 13 ("We have exercised this discretion to recognize some limited exceptions to our general preservation rule."). However, there has arisen some confusion concerning our preservation exceptions, as is evident from the three opinions in the court of appeals in this case. Also, we have rarely touched on when it is appropriate for an appellate court to reach an issue *sua sponte* that has been waived on appeal. We therefore use this opportunity to

clarify our preservation and waiver doctrines and to outline when a court may reach an issue *sua sponte*. We begin by discussing the terminology of preservation and waiver.

### *B. Definitions of Preservation and Waiver on Appeal*

¶14   Under our adversarial system, the parties have the duty to identify legal issues and bring arguments before an impartial tribunal to adjudicate their respective rights and obligations. This duty of the parties exists in both the trial court and in the appellate court. If the parties fail to raise an issue[2] in either the trial or

---

[2] In *Patterson*, this court rejected the "distinction between 'issues' and 'arguments' when determining whether to apply our preservation rule." 2011 UT 68, ¶ 14. But *Patterson* merely stated that the appellant's argument was "semantics," and required courts to look at the underlying policies to determine whether new arguments are actually entirely new issues. *Id.* ¶ 15. *Patterson* confirms that we view *issues* narrowly, but also made it clear that new *arguments*, when brought under a properly preserved issue or theory, do not require an exception to preservation. Such arguments include citing new authority or cases supporting an issue that was properly preserved. *Id.* ¶ 18 ("[W]e routinely consider new authority relevant to *issues* that have properly been preserved . . . ." (emphasis added)); *see also Bagley v. Bagley*, 2016 UT 48, ¶ 26, 387 P.3d 1000 (holding that the "absurd result argument does not raise a wholly new issue" because it is an essential argument for correctly interpreting a statute that was properly raised).

For instance, in *Patterson*, we cited *In re Estate of Sims*, 918 P.2d 132, 134 n.2 (Utah Ct. App. 1996) to support our refusal to make a distinction between arguments and issues. *Patterson*, 2011 UT 68, ¶ 14 n.5. However, as the *Patterson* court notes, in *Sims*, the court of appeals "rejecte[d] [the] appellant's attempt to avoid the preservation rule by characterizing estoppel as a new argument rather than a new issue." *Id.* Estoppel is an entirely distinct legal theory, and is thus a new claim or issue. So, if the appellant in *Sims* had preserved the issue of estoppel below, and had simply cited different precedent or clarified their argument for estoppel on appeal, they would not have required an exception to preservation. Indeed, every case cited in *Patterson* to support the assertion that this court has "refuse[d] to consider new . . . arguments . . . on appeal," dealt with entirely new legal theories. *Patterson*, 2011 UT 68, ¶ 17, citing

*Carrier v. Salt Lake Cty.*, 2004 UT 98, ¶¶ 42–43, 104 P.3d 1208 (refusing to consider appellant's argument that it

(continued . . .)

appellate court, they risk losing the opportunity to have the court address that issue.

¶15 When a party fails to raise and argue an issue in the trial court, it has failed to preserve the issue, and an appellate court will not typically reach that issue absent a valid exception to preservation. *Patterson*, 2011 UT 68, ¶ 12 (stating that appellate courts "generally will not consider an issue unless it has been preserved for appeal"). "An issue is preserved for appeal when it has been 'presented to the district court in such a way that the court has an opportunity to rule on [it].'"[3] *Id.* (alteration in original) (citation omitted). "To provide the court with this opportunity, 'the issue must be specifically raised [by the party asserting error], in a timely manner, and must be supported by evidence and relevant legal authority.'" *State ex rel. D.B.*, 2012 UT 65, ¶ 17, 289 P.3d 459 (alteration in original); *see also O'Dea v. Olea*, 2009 UT 46, ¶ 18, 217 P.3d 704. (To preserve an issue: "(1) the issue must be raised in a timely fashion; (2) the issue must be specifically raised; and (3) a party must introduce supporting evidence or relevant legal authority." (citation omitted)).

¶16 When a party fails to raise and argue an issue on appeal, or raises it for the first time in a reply brief, that issue is waived and

---

(continued . . .)

> was entitled to attorney fees under the private attorney general doctrine because the issue was not argued below); *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶¶ 50–52, 99 P.3d 801 (declining to address appellant's challenge to the district court's findings of fact because the district court had not been sufficiently "alerted" to the error claimed on appeal); *Shayne v. Stanley & Sons, Inc.*, 605 P.2d 775, 776 (Utah 1980) (rejecting appellant's negligence claim because it was not argued below); [*James v.*] *Preston*, 746 P.2d [799,] 801 [(Utah Ct. App. 1987)] (refusing to address appellant's equitable mortgage theory because appellant did not raise it sufficiently before the district court).

[3] We have also recognized that an issue is considered preserved in some circumstances when "[t]he district court[] deci[des] to take up the question" on its own. *Fort Pierce Indus. Park Phases II, III & IV Owners Ass'n v. Shakespeare*, 2016 UT 28, ¶ 13, 379 P.3d 1218 (first alteration in original) (citation omitted).

will typically not be addressed by the appellate court.[4] *Allen v. Friel*, 2008 UT 56, ¶¶ 7–8, 194 P.3d 903 (appellants failing to raise an issue, or raising an issue for the first time in their reply brief, have waived the issue on appeal); *Robison*, 2006 UT 65, ¶ 22 (agreeing with the Illinois Supreme Court that "[the court of appeals] should not normally search the record for unargued and unbriefed reasons to reverse a [district] court judgment" (alterations in original) (citation omitted)).

¶17 Preservation and waiver are not mutually exclusive. There are at least four possible interactions between these two requirements. First, a party may have preserved an issue in the trial court and properly raised it on appeal. In this instance, the appellate court will typically address the issue. Second, a party may have preserved an issue, but failed to properly raise it on appeal, thus waiving it. Third, a party may have failed to preserve an issue in the trial court, but seeks to raise it on appeal. In this instance, the party must argue an exception to preservation. Finally, a party may have failed to preserve an issue in the trial court, and failed to raise and

---

[4] This is not to be confused with when an issue is waived in the trial court. This overlap of terminology can cause confusion. Waiver, in the context of raising an issue before a court, is generally the relinquishment or abandonment of an issue before a trial *or* appellate court. Waiver may be express, such as through a stipulation of the parties, *see Redev. Agency of Salt Lake City v. Tanner*, 740 P.2d 1296, 1299–1300 (Utah 1987) (party could not challenge a stipulated issue without showing the stipulation was invalid), or implied, such as by failing to raise an issue or argument at the required time, *see Larrabee*, 2013 UT 70, ¶ 16 (objection that was raised "two months after the trial" was not timely enough to preserve the issue for appeal).

Waiver may thus occur in trial courts and in appellate courts. If an issue has been waived in the trial court, that issue is not preserved for appeal. *Salt Lake City Corp. v. Jordan River Restoration Network*, 2012 UT 84, ¶ 108, 299 P.3d 990 ("Our preservation rule does not permit a party to waive an issue before the district court and later raise the issue on appeal."). When a party fails to raise and argue an issue on appeal, the issue has been waived before the appellate court. In both instances, the issue has been waived, but for clarity in this opinion we use "preservation" terminology to refer to a waiver of an issue in the trial court, and we use "waiver" to refer to an issue that has not properly been raised and argued on appeal.

argue the issue on appeal.[5] In any of the second through fourth examples, this court will not typically reach the issue absent some recognized exception.

## II. EXCEPTIONS TO PRESERVATION

¶18   As mentioned above, parties are required to raise and argue an issue in the trial court "in such a way that the court has an opportunity to rule on [it]." *Patterson v. Patterson*, 2011 UT 68, ¶ 12, 266 P.3d 828 (alteration in original) (citation omitted). A failure to preserve an issue in the trial court generally precludes a party from arguing that issue in an appellate court, absent a valid exception. *See id.*

¶19   This court has recognized three distinct exceptions to preservation: plain error, ineffective assistance of counsel, and exceptional circumstances. When an issue is not preserved in the trial court, but a party seeks to raise it on appeal, the party must establish the applicability of one of these exceptions to persuade an appellate court to reach that issue.

### A. Plain Error

¶20   "To demonstrate plain error, a defendant must establish that '(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful . . . .'" *State v. Holgate*, 2000 UT 74, ¶ 13, 10 P.3d 346 (alteration in original) (citation omitted). "If any one of these requirements is not met, plain error is not established." *State v. Dean*, 2004 UT 63, ¶ 15, 95 P.3d 276 (citation omitted).

¶21 For an error to be obvious to the trial court, the party arguing for the exception to preservation must "show that the law governing the error was clear," *id.* ¶ 16, or "plainly settled," *id.* ¶ 18, "at the time the alleged error was made," *id.* ¶ 16. For it to be harmful, the error must be shown to have been "of such a magnitude that there is a reasonable likelihood of a more favorable outcome for the defendant." *Id.* ¶ 22 (citations omitted). This test is "equivalent to the prejudice test applied in assessing claims of ineffective assistance

---

[5] These are the basic interactions between these requirements. There are other instances in which preservation and waiver interact, such as when an appellant fails to preserve an issue below but the appellee waives their argument on appeal that the appellant failed to preserve the issue. We do not address the effect of such an interaction in this opinion; we merely note that other interactions between waiver and preservation may exist.

of counsel." *Id.* In determining if the harm was prejudicial, we determine whether there is a "reasonable probability" that, "'but for' the alleged error," the outcome in the case would have been different. *Id.*

*B. Ineffective Assistance of Counsel*

¶22 Ineffective assistance of counsel is sometimes characterized as an exception to preservation. *See State v. Griffin*, 2016 UT 33, ¶ 22, 384 P.3d 186 ("[I]neffective assistance of counsel claims [are] a recognized exception to our preservation requirements."); *see also State v. Low*, 2008 UT 58, ¶ 19, 192 P.3d 867. But this exception differs from the other preservation exceptions. Under plain error or exceptional circumstances, the court may reach the *substantive* claim that was not preserved in the trial court. Ineffective assistance of counsel, however, is a stand-alone constitutional claim attacking the performance of a criminal defendant's counsel. *See* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."); *see also Strickland v. Washington*, 466 U.S. 668, 686 (1984) (stating that the Sixth Amendment "right to counsel is the right to the effective assistance of counsel" (citation omitted)) *superseded on other grounds by* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, 110 Stat. 1214. While such a claim necessarily requires the court to look at the substantive issue the defendant argues his counsel should have raised, and whether the substantive issue had any merit, the substantive issue is only viewed through the lens of counsel's performance. *Archuleta v. Galetka*, 2011 UT 73, ¶ 32, 267 P.3d 232 (ineffective assistance of counsel is an entirely new claim that does not "revive[] the underlying substantive claim"); *State v. Hansen*, 2002 UT 114, ¶ 21 n.2, 61 P.3d 1062 ("[P]art[ies] may . . . assert ineffective assistance of counsel in failing to preserve [an] issue.").

¶23 Ineffective assistance of counsel is thought of as an exception to preservation because a claim for ineffective assistance could not have been raised in the trial court; it does not mature until after counsel makes an error. Thus, while it is not a typical exception to preservation, it allows criminal defendants to attack their counsel's failure to effectively raise an issue below that would have resulted in a different outcome. *See State v. Roth*, 2001 UT 103, ¶¶ 5, 11, 37 P.3d 1099. This exception applies only in criminal cases, because criminal defendants are the only parties constitutionally guaranteed the right to effective assistance of counsel.

### C. Exceptional Circumstances

¶24 Utah appellate courts have characterized the exceptional circumstances exception as "ill-defined," *see Holgate*, 2000 UT 74, ¶ 12 (citation omitted), and as an "[im]precise doctrine" that cannot "be analyzed in terms of fixed elements," *State v. Irwin*, 924 P.2d 5, 8 (Utah Ct. App. 1996). This is perhaps the source of the confusion generated by *State v. Robison*, 2006 UT 65, 147 P.3d 448, in the court of appeals. We undertake clarification of *Robison*'s scope and our view of the concept of exceptional circumstances.

1. *Robison* Did Not Contemplate an Extension of Exceptional Circumstances

¶25 The court of appeals erred when it determined that *Robinson* extended the scope of the exceptional circumstances doctrine. Two members of the court of appeals panel, writing separately, concluded that *Robison* applied and extended the exceptional circumstances exception in the context of the preservation rule. They understood *Robison* as an exceptional circumstances case because of its reliance on *State v. Breckenridge*, 688 P.2d 440 (Utah 1983), which they believed was also an exceptional circumstances case. *See State v. Johnson*, 2014 UT App 161, ¶ 16, 330 P.3d 743; *id.* ¶ 31 (Roth, J., concurring); *but see State v. Brown*, 853 P.2d 851, 854 (Utah 1992) ("*Breckenridge* was a case of plain error . . . ."). The third member of the panel dissented, opining that *Robison* does not apply when the defendant invited the error in the trial court. *Johnson*, 2014 UT App 161, ¶ 47 n.14 (Bench, S.J., dissenting) ("*Robison* . . . does not obviate the application of the invited error doctrine . . . .").

¶26 In *Robison*, we distinguished between the case where an appellate court may reach an issue that was not preserved in the trial court and the case where a court may raise an issue *sua sponte* that was waived by the parties on appeal. We reviewed a court of appeals' decision in which it ruled on an issue that was not preserved in the trial court, and was waived by the parties on appeal. *Robison*, 2006 UT 65, ¶¶ 9–10. The court of appeals reached the issue *sua sponte* without seeking supplemental briefing or argument from the parties. *Id*. ¶¶ 15–16. We stated that "the preservation rule and its exceptions do not contemplate arguments that are never presented by the parties," and are thereby waived on appeal. *Id*. ¶ 17. We went on to state that, "[b]ecause an exception to the preservation rule is insufficient to justify the court of appeals' decision, we next explore whether any other appellate principle would justify reversing the district court by invoking new law based on a theory that has not been raised by the parties." *Id*. ¶ 18.

¶27 Thus, when a party realizes an important issue was not preserved in the trial court, but wishes an appellate court to address that issue, the party must argue that an exception to preservation applies. However, when the appellate court itself identifies and reaches an issue *sua sponte* that was waived on appeal, something different is at play. While both the willingness of an appellate court to address an issue not preserved at trial and the willingness to address an issue not argued on appeal are an exercise of the same discretion, *see Patterson*, 2011 UT 68, ¶ 13, the two sets of circumstances are separate matters governed by different standards for the exercise of that discretion.

¶28 Our opinion was intended to explain when it is appropriate for appellate courts to address an issue *sua sponte* that was waived on appeal and what steps must be taken to ensure fairness to the parties, such as requesting supplemental briefing. *Robinson*, 2006 UT 65, ¶¶ 9–10, 24. We acknowledge some sympathy with the court of appeals in its over-reading of *Robison*. Our precedent governing preservation and waiver has been evolving over time, as we have wrestled with the balance between procedural regularity and fairness, and as we have attempted to create the proper terminology for exceptions to preservation and waiver. This evolution has given rise historically to some confusion between when a court may *sua sponte* reach an issue waived by the parties on appeal, and when a court may reach an issue that was not preserved in the trial court.[6]

---

[6] The evolution in our case law is highlighted by *Breckenridge* (a thirty-four-year-old case). In *Breckenridge*, the court justified its *sua sponte* identification of an issue that was waived on appeal by using an exception to preservation. 688 P.2d at 443. We stated that "[t]he general rule that constitutional issues not raised at trial cannot be raised on appeal is excepted to when a person's liberty is at stake." *Id*. However, we have since abandoned that exception to preservation. *See State v. Lopez*, 886 P.2d 1105, 1113 (Utah 1994) (abandoning rule that a constitutional claim along with a liberty interest alone are sufficient to reach an unpreserved issue). The court of appeals subsequently viewed *Breckenridge* as an exceptional circumstances case. *State v. Archambeau*, 820 P.2d 920, 924 (Utah Ct. App. 1991) ("*Breckenridge* is a case in which the 'exceptional circumstances' exception would have allowed appellate review."). However, this court later stated that "*Breckenridge* was a case of plain error," even though *Breckenridge* did not strictly follow traditional plain error analysis. *Brown*, 853 P.2d at 853–54. This history highlights the evolution of preservation and waiver as this court

(continued . . .)

*Robison* itself is not as helpful as we intended. For this reason, we clarify the exceptional circumstances doctrine.

2. Clarification of Exceptional Circumstances

¶29 The exceptional circumstances doctrine is applied "sparingly, reserving it for the most unusual circumstances where our failure to consider an issue that was not properly preserved for appeal would have resulted in manifest injustice." *Adoption of K.A.S.*, 2016 UT 55, ¶ 19, 390 P.3d 278 (citation omitted). We apply this exception to reach an unpreserved issue where a "rare procedural anomal[y]" has either prevented an appellant from preserving an issue or excuses a failure to do so. *Id.* ¶¶ 19–20 (citation omitted). The showing of a rare procedural anomaly is not determinative, but rather opens the door to a deeper inquiry. Once a party shows that a rare procedural anomaly has occurred, additional factors must be considered to determine whether an appellate court should reach an unpreserved issue. We review our case law to illustrate what constitutes a rare procedural anomaly and then we examine factors that may be considered after that initial showing is made.

¶30 Historically, we have on occasion taken exception to preservation rules when a "palpable error" was observed on the record. *State v. Cobo*, 60 P.2d 952, 958 (Utah 1936) ("[W]hen palpable error on the face of the record involved violations of fundamental rights . . . . 'we feel ourselves at liberty to correct it.'" (citation omitted)). Until recently, courts in this state have used the terms "exceptional circumstances" and "plain error" interchangeably when discussing the palpable error exception set forth in *Cobo*. *See State v. Scott*, 447 P.2d 908, 910 (Utah 1968) ("[T]here may be exceptional circumstances when errors not excepted to are so clearly erroneous and prejudicial to the fundamental rights of a defendant that an appellate court will of its own accord take notice thereof.").

¶31 It wasn't until *State v. Gibbons* in 1987 that we expressly recognized a distinction between plain error and exceptional circumstances. 740 P.2d 1309, 1311 (Utah 1987) ("[T]his Court will not entertain an issue first raised on appeal in the absence of exceptional circumstances or plain error."). Since *Gibbons*, the

---

(continued . . .)

made an early attempt in *Breckenridge* to explain what is happening when an appellate court raises an issue *sua sponte* that has been waived on appeal.

showing of a rare procedural anomaly has been requisite to invoking exceptional circumstances.

¶32   In *Gibbons*, we remanded the issue of whether the defendant had willfully and voluntarily entered a guilty plea, despite the defendant's failure to preserve the issue below. *Id.* at 1310. At the time of the *Gibbons* appeal, the defendant had not preserved his argument because he had failed to file a motion to withdraw his guilty plea with the district court. *Id.* at 1311. However, a Utah statute governing the withdrawal of pleas provided "no time limit for filing a motion to withdraw the plea." *Id.* The statute created a procedural anomaly because, while the defendant had failed to preserve the issue, he still had the option to preserve the issue at any time during the appeal. This opened the door to the possibility of two separate appeals, on the same issue, had the defendant filed a motion to withdraw with the trial court while the current appeal was still pending. *Id.* Rather than dismissing the appeal outright for failure to preserve, this court retained the case for the sole purpose of remanding to allow the defendant to file a motion to withdraw his guilty plea in the district court. *Id.*

¶33   In *State v. Haston*, we recognized a rare procedural anomaly when controlling precedent is issued that abolishes the offense for which the defendant was convicted while the defendant's appeal is pending. 846 P.2d 1276 (Utah 1993). Thus, a rare procedural anomaly exists "where a change in law or the settled interpretation of law color[s] the failure to have raised an issue at trial." *Irwin*, 924 P.2d at 10 (citing *Haston*, 846 P.2d 1276).

¶34   In *State v. Lopez*, the defendant was pulled over for turning without using a signal. 873 P.2d 1127, 1129–30 (Utah 1994). A check of the defendant's identification showed that he had three warrants for his arrest and no driver's license. *Id.* at 1130. During an inventory search of the defendant's vehicle, several bags of cocaine were found and the defendant was charged with unlawful possession with intent to distribute. *Id.* The defendant argued, under well-established Utah court of appeals' precedent, that the officer conducted a pretextual stop that violated the Fourth Amendment of the U.S. Constitution. *Id.* The district court held that the officer conducted a pretextual stop and suppressed the evidence. *Id.* On appeal, the State argued that this court should abandon the pretext doctrine under the Fourth Amendment. Based on the State's argument, the defendant cross-appealed arguing that this court should adopt the pretext doctrine under the Utah Constitution. The state challenged the cross-appeal, arguing that the defendant did not raise the interpretation of the Utah Constitution in the district court. This court held that a rare

procedural anomaly justified the defendant's failure to raise the issue below because, "[a]t the time of the suppression hearing, the pretext doctrine was the controlling rule of Fourth Amendment law as interpreted by the court of appeals," and the defendant "had no reason to" raise the state constitutional claim at that time. *Id.* at 1134 n.2. Therefore, the state constitutional argument "did not appear applicable" until the State challenged the well-settled precedent that the defendant had relied on. *Id.*

¶35 In *State ex rel. D.B.*, we recognized a rare procedural anomaly "when the alleged error first arises in the lower court's final order or judgment and thus, leaves no opportunity for the party to object . . . ." 2012 UT 65, ¶ 34, 289 P.3d 459 (citation omitted); *see also Salt Lake City v. Ohms*, 881 P.2d 844, 846–47 (Utah 1994) (challenging the unpreserved issue of whether a court commissioner had the authority to issue a judicial order). In *D.B.*, the State argued that the juvenile had committed theft and criminal trespass under principal liability and did not "pursue an accomplice liability theory for criminal trespass during trial or closing arguments." 2012 UT 65, ¶ 35. However, while D.B. had notice of the possibility of accomplice liability for the *theft* claim, he did not receive notice of the possibility of accomplice liability for the *trespass* claim until "several weeks" after the trial when the judge issued his decision. *Id.*

¶36 Recently, in *Adoption of K.A.S.*, we held that a rare procedural anomaly existed "[w]hen a party [was] appointed counsel who refuse[d] to make an argument for the right to counsel when that right [was] challenged." 2016 UT 55, ¶ 21. In *K.A.S.*, the district court initially granted a motion to appoint counsel to an indigent party. *Id.* ¶ 20. The county attorney later filed a "motion to intervene, arguing that the statute did not provide a right to counsel." *Id.* The court-appointed counsel failed to oppose the motion and it was granted by the district court. *Id.* We held that the appointed counsel's failure to oppose the motion to intervene constituted a rare procedural anomaly that opened the door to exceptional circumstances.[7] *Id.* ¶ 21.

---

[7] The *K.A.S.* court noted that

Our holding today should not be construed to mean that the exceptional circumstances exception applies any time a lawyer fails to make an argument. Rather, our holding is intricately tied to the deprivation of counsel under the unique facts of this proceeding. Here, a lawyer was appointed, but abdicated all

(continued . . .)

¶37 Once a party has shown that a rare procedural anomaly has occurred, the court must then consider the effects of the anomaly, and whether those effects warrant an exception to our preservation requirement. Additional factors to be considered include: whether "our failure to consider an issue that was not properly preserved for appeal would . . . result[] in manifest injustice," *State v. Munguia*, 2011 UT 5, ¶ 11, 253 P.3d 1082 (alterations in original) (citation omitted), a significant constitutional right or liberty interest is at stake, *Adoption of K.A.S.*, 2016 UT 55, ¶ 25 (constitutional right to raise one's child), *State v. Archambeau*, 820 P.2d 920, 925 (Utah Ct. App. 1991) (A "'liberty interest' is . . . merely one factor . . . considered when determining whether 'exceptional circumstances' exist."), and judicial economy, *Gibbons*, 740 P.2d at 1311 (review of an unpreserved issue eliminated undue delay, wasting time, or needless litigation, such as the possibility of two separate appeals).

¶38 As the foregoing discussion suggests, the category of exceptional circumstances as a "carve out," or exception, to the preservation rule has been anchored in the idea of rare procedural anomalies, but its precise contours require case-by-case assessment. What should be clear, however, is that it is not a catch-all category that may be used to do the work of other exceptions, like plain error, nor should it be viewed as a free-floating justification for ignoring the legitimate concerns embodied in the preservation and waiver rules.

¶39 We acknowledge that our precedent has evolved in this area; it is possible that it will continue to evolve as we confront future challenges concerning the scope of appellate review when preservation and waiver are at issue. At present, however, the exceptions discussed above—plain error, ineffective assistance of counsel, and exceptional circumstances—provide the standards for

---

(continued . . .)

> responsibility by failing to make any argument regarding L.E.S.'s right to representation, constructively denying L.E.S. counsel and leaving him without the technical ability to present to the district court his own, separate argument for counsel. Moreover, L.E.S. is without a meaningful malpractice action as that does not provide a vehicle for regaining his parental rights in K.A.S.

*Adoption of K.A.S.*, 2016 UT 55, ¶ 21 n.3.

exercising review on appeal. We turn now to the question of when an appellate court may reach *sua sponte* an issue waived on appeal, as occurred in this case.

## III. *SUA SPONTE* TREATMENT OF AN ISSUE WAIVED ON APPEAL

¶40 Utah's appellate courts have on occasion raised and treated issues *sua sponte* that were not raised in the briefs and were therefore waived. Any time a judge raises an otherwise overlooked or unargued issue, the judge arguably undertakes an advocacy role to some extent, as it is the parties' duties to raise and argue the issues.[8] This is perhaps one of the major reasons our appellate system places significant emphasis on procedural regularity.

¶41 However, at times, we have sacrificed procedural regularity and a strict adherence to the adversarial model when "considerations of fairness and justice outweigh the considerations underlying the general policy of deference to the adversarial process." *Blumberg Assocs. Worldwide, Inc. v. Brown & Brown of Connecticut, Inc.*, 84 A.3d 840, 867 (Conn. 2014). Of course it is also true that there are times when raising an issue *sua sponte* that was waived on appeal places too much emphasis on equity at the expense of procedural regularity and unfairly prejudices one party or the other.

¶42 *State v. Robison* attempted to locate a balance between these considerations. 2006 UT 65, ¶ 23, 147 P.3d 448. *Robison* held that the court of appeals may raise a waived issue *sua sponte* when it identifies "an astonishingly erroneous but undetected ruling," that would "subject the losing party . . . to 'great and manifest injustice,'" *id.*, so long as it seeks argument from the parties on the waived issue, *id.* ¶ 24. This statement was limited to the question of when the court of appeals may raise an issue waived on appeal—it did not address when it is appropriate for the court of appeals to raise an issue that was neither preserved at trial nor argued on appeal. In a footnote, we stated that the "great and manifest injustice" standard applies to

---

[8] This problem exists regardless of any measures taken to limit the effects of such an action, such as ordering supplemental briefing. If the judge raises an entirely new issue, it is obviously acting more as an advocate than if it simply orders supplemental briefing on an issue that was raised, but was inadequately briefed. However, in either instance, the judge is asking the parties to address a matter that it would not typically reach and that could ultimately alter the outcome of the case.

the question of when the court of appeals may "raise *unpresented* arguments." *Id.* ¶ 23 n.3 (emphasis added).

¶43 While *Robison* established the test for when the court of appeals may raise an issue *sua sponte*, another footnote noted, "[a]s a court of last resort, [the supreme court] ha[s] the authority to decide on whatever grounds we deem appropriate, regardless of *preservation* or *presentation*." *Id.* ¶ 25 n.5 (emphasis added). *Robison* thus purported to limit the court of appeals' ability to reach issues waived on appeal, while reserving for this court broad discretion to reach any issue, whether waived or unpreserved, as long as it is exercised "cautiously and rarely." *Id.* This distinction was *dicta*, and we now conclude that any distinction between this court's authority and that of the court of appeals' to address unpreserved issues, or raise waived issues *sua sponte*, is unwarranted and should not be the rule.

¶44 The disposition of this case requires us to examine first the general question of when appellate courts may reach an issue *sua sponte* that could result in reversing a lower court on grounds that were not argued on appeal.[9] In order to reach an issue that was waived by the parties on appeal, we conclude that the appellate court should usually allow the parties to argue the issue, and that the court should examine closely the appropriateness of acting despite the existence of waiver.

¶45 Before addressing an issue that has been waived on appeal, an appellate court should typically allow some form of argument from the parties to "test a notion of [the court's] own invention before using it to justify a reversal." *Robison*, 2006 UT 65, ¶¶ 23–24. Ordinarily, the best way to test a notion of the court's own invention will be through supplemental briefing. *Id.* ¶ 24. This gives the parties adequate time to research and draft thoughtful responses. Another effective means is through a remand to the trial court, particularly when further factual determinations are necessary. *Id.* ¶ 25 (suggesting remand as a possible means for argument on the waived issue); *cf. Patterson v. Patterson*, 2011 UT 68, ¶ 15, 266 P.3d 828 (preservation should be more strictly applied when the "appellant asserts unpreserved claims that require factual predicates"). Issues may be raised by appellate courts during oral arguments as well,

---

[9] In *Robison*, we discussed when it is appropriate for an appellate court to affirm a district court on other grounds. 2006 UT 65, ¶ 19. Here, we only address when it is appropriate to reach an unbriefed issue that could reverse a lower court.

though this method gives the parties less ability to prepare an adequate response and is best shored up by subsequent supplementary briefing, especially for a complex issue. *Robison*, 2006 UT 65, ¶ 24 n.4. There may be other means of allowing the parties to argue an issue, and we do not foreclose such possibilities.

¶46 Some arguments, as opposed to issues, are so minor as to not require any additional argument from the parties. *See supra* ¶ 14 n.2. For instance, the court may cite a case in its opinion that was not cited by either party without further argument when that case is merely explanatory or assists in the analysis of an issue that was properly brought by the parties. *Patterson*, 2011 UT 68, ¶ 18.

¶47 As mentioned above, *supra* ¶ 17, there are four interactions between preservation in the trial court and waiver on appeal. 1) When an issue is preserved at trial and properly argued on appeal, appellate courts should typically reach that issue absent some defect in briefing, *see Bank of Am. v. Adamson*, 2017 UT 2, ¶ 12, 391 P.3d 196 ("[A]n appellant who fails to adequately brief an issue 'will almost certainly fail to carry its burden of persuasion on appeal.'" (citation omitted)), the case is disposed of on other grounds, *see Morra v. Grand Cty.*, 2010 UT 21, ¶ 14, 230 P.3d 1022, or the court employs some other reason for avoiding the issue. 2) When an issue has not been preserved in the trial court, but the parties argue that issue on appeal, the parties must argue an exception to preservation for the issue to be reached on its merits. This leaves the last two interactions where the appellate court reaches an issue *sua sponte*: 3) the issue is preserved, but the parties failed to raise the issue on appeal, and 4) the issue is not preserved nor is it argued on appeal.

¶48 There are limited circumstances when it is appropriate for an appellate court to raise an issue *sua sponte* that was waived by appellate counsel, regardless of whether it was preserved at trial. In each of these exceptions, we start with the presumption that, "[i]n general, if a [party] has not raised an issue on appeal, [an appellate court] may not consider the issue sua sponte." *Allen v. Friel*, 2008 UT 56, ¶ 7, 194 P.3d 903 (third alteration in original) (citation omitted). We now address those circumstances.

1. Issues Were Preserved at Trial, or a Valid Exception to Preservation Exists, but the Issues Were Waived by the Parties on Appeal

¶49 An appellate court may raise a waived issue *sua sponte* when, 1) the issue was preserved below or if a valid exception to

preservation exists,[10] *see Blumberg Assocs.*, 84 A.3d at 867–68, 2) the issue is "astonishingly erroneous but undetected," *Robison*, 2006 UT 65, ¶ 23, 3) the losing party would be subject to "great and manifest injustice,"[11] *id.*, and 4) neither party is unfairly prejudiced by raising the issue at that point in the litigation or neither party argues they are unfairly prejudiced,[12] *Blumberg Assocs.*, 84 A.3d at 868–69. A party may be unfairly prejudiced, for example, when it would have presented additional evidence in the trial court necessary to determine the proper outcome of the issue on appeal, but had no opportunity because the issue was not raised. *See id.* at 864 (unfair prejudice exists when "a party demonstrates that it would have presented additional evidence or that it otherwise would have proceeded differently if the claim had been raised at trial"); *see also Salt Lake City v. Carrera*, 2015 UT 73, ¶¶ 20–21, 358 P.3d 1067 (refusing to order supplemental briefing when "record before us is scant," and "supplemental briefing is unlikely to yield much factual clarity"); *Patterson*, 2011 UT 68, ¶ 15 ("[T]he preservation rule should be more strictly applied when the asserted new issue or theory 'depends on controverted factual questions whose relevance thereto was not made to appear at trial'" (citation omitted)); *Lesesne v. Doe*, 712 F.3d 584, 588 (D.C. Cir. 2013) (willing to look at unpreserved

---

[10] It would be best in these cases to include in a supplemental briefing order, or in another request for additional argument, a statement that the parties must demonstrate that the issue was preserved below (if not apparent from the record), or show that there is a valid exception to preservation.

[11] As we noted in *Robison*, a "great and manifest injustice" is likely to occur only in a criminal proceeding where "the deprivation of personal freedoms is at stake." 2006 UT 65, ¶ 23 n.3. This should not to be confused with the manifest injustice factor under the exceptional circumstances doctrine. *See supra* ¶ 37.

[12] In Connecticut, a party is required to argue unfair prejudice when seeking an exception to preservation. *Blumberg Assocs.*, 84 A.3d at 864 (discussing the "unfair prejudice" standard in the context of exceptions to preservation). Utah has not yet recognized such a requirement when reaching an exception to preservation. Connecticut also requires a lack of unfair prejudice when an appellate court raises issues *sua sponte*. *See id.* at 868. We agree that such a requirement assists in appropriately balancing fairness and procedural regularity when a court raises a waived issue *sua sponte*. A best practice in determining whether unfair prejudice exists would be asking the parties to address that question specifically.

issue because it was a "straightforward legal question that does not require further factual development").

2. Issues Were Not Preserved at Trial and Were Not Raised on Appeal

¶50  Appellate courts may reach an issue when the issue was not preserved, there is no valid exception to preservation, and it was not raised by the parties on appeal in the following instances. First, it is always appropriate for an appellate court to raise possible issues concerning subject matter jurisdiction or joinder of a necessary and indispensable party, regardless of whether such issues were argued on appeal or preserved in the trial court. *See State v. Lane,* 2009 UT 35, ¶ 1 n.1, 212 P.3d 529 (court ordered supplemental briefing on jurisdiction after oral argument); *Robison*, 2006 UT 65, ¶ 22 ("[o]ther than for jurisdictional reasons [the court of appeals] should not normally search the record for unargued and unbriefed reasons to reverse" (alterations in original) (citation omitted)); *Kennecott Corp. v. Utah State Tax Comm'n*, 814 P.2d 1099, 1100 (Utah 1991) ("[A] lack of jurisdiction can be raised at any time by either party or by the court." (citation omitted)); *McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 16 (1963) (concluding that the court was not "precluded from reexamining the jurisdiction of the District Court . . . merely because no challenge was made by the parties"); *Dahl v. Dahl*, 2015 UT 79, ¶ 11, --- P.3d --- ("[A]ppellate courts may raise the issue [of joinder] *sua sponte*." (second alteration in original) (quoting *Hiltsley v. Ryder*, 738 P.2d 1024, 1025 (Utah 1987))).

¶51 Second, an appellate court may reach a waived and unpreserved issue when it is 1) a purely legal issue, 2) that is almost certain to arise and assist in the analysis in other cases, 3) is necessary to correctly determine an issue that was properly raised, and 4) neither party is unfairly prejudiced by raising the issue at that point or neither party argues that they are unfairly prejudiced.[13] *See, e.g., Utah Dep't of Transp. v. Admiral Beverage Corp.*, 2011 UT 62, ¶ 8, 275 P.3d 208; *Lesesne*, 712 F.3d at 588–89; *United States v. Krynicki*, 689 F.2d 289, 291–92 (1st Cir. 1982). Examples of this include whether to overrule precedent on which the parties rely, *see Admiral Beverage Corp.*, 2011 UT 62, ¶ 8 (ordering supplemental briefing after oral argument on whether to overrule precedent relied on by the parties), interpreting the law that the parties rely on, *Arnold v. Grigsby*, 2009 UT 88, ¶¶ 5, 22–23, 225 P.3d 192 (ordering supplemental briefing on

---

[13] Unfair prejudice in this instance is the same as that identified *supra* paragraph 49.

the "purely legal" interpretation and application of two statutes), determining that a law is inapplicable, *Lesesne*, 712 F.3d at 588, determining if a statute relied upon is still effective, *U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 447 (1993), and considering controlling authority that was not raised by either party, *Patterson*, 2011 UT 68, ¶ 18 ("[W]e routinely consider new authority relevant to issues that have properly been preserved . . . .").[14]

¶52 Finally, there are times when a statute or rule allows for the treatment of an issue that is unpreserved and waived by the parties on appeal. *See* UTAH R. CRIM. P. 22(e) (2015)[15] ("The court may correct an illegal sentence . . . at any time."); *State v. Houston*, 2015 UT 40, ¶ 20, 353 P.3d 55 ("Rule 22(e) operates as [a] limited exception to the preservation doctrine." (citation omitted)), *as amended* (Mar. 13, 2015), *reh'g denied* (June 30, 2015), *cert. denied*, 136 S. Ct. 2005 (2016); *State v. Pierce*, 655 P.2d 676, 677 (Utah 1982) (allowing appellate courts to entertain issues *sua sponte* "in rare cases" based on the old version of rule 4 of the Utah Rules of Evidence).

¶53 The foregoing standards for exercising appellate review of issues waived on appeal are intended to provide a baseline assessment of where the proper balance between procedural regularity and adjudicative fairness lies. It is unlikely that our current assessment is exhaustive, and it may require adjustment as cases arise in unforeseen circumstances leading to unforeseen questions. We anticipate that appellate litigants and our colleagues on the court of appeals will be alert to the application and necessary refinements to the process we have outlined here.

## IV. APPLICATION TO THIS CASE

¶54 Having determined when it is appropriate for an appellate court to raise *sua sponte* an issue that was waived on appeal, we now

---

[14] There is overlap between this exception and when a court may raise an issue *sua sponte* that meets the *Robison* exception laid out *supra* paragraph 49. While the court may raise an issue *sua sponte* under the purely legal issue exception, the same issue might also be able to be raised under the *Robison* exception. For this reason, when an appellate court seeks supplemental briefing or other argument on an issue identified by the court that was waived by the parties on appeal, the court should ask the parties to discuss whether either of these exceptions apply.

[15] This rule was amended in 2016 to more specifically detail the circumstances under which a court may correct a sentence.

apply this analysis to this case. The issue raised by the court of appeals was not raised by the appellant in his opening brief, nor was it preserved in the trial court. As noted above, an appellate court may only reach the waived and unpreserved issue *sua sponte* if the issue deals with subject matter jurisdiction, there is a statute or rule allowing the court to reach the issue, it meets the purely legal issue exception to waiver and preservation laid out *supra* paragraph 51, or it meets the *Robison* exception to waiver and preservation laid out *supra* paragraph 49.

¶55 The issue raised by the court of appeals *sua sponte* was whether a jury instruction misstated the *mens rea* of the lesser included offense of homicide by assault. Under Utah Code section 76-5-209, a person commits homicide by assault when "a person causes the death of another," under circumstances "not amounting to aggravated murder, murder, or manslaughter," "while *intentionally or knowingly attempting*, with unlawful force or violence, *to do bodily injury to another*." (Emphasis added). The instruction stated that Mr. Johnson was guilty of homicide by assault if he killed the victim, "under circumstances not amounting to aggravated murder, murder, or manslaughter," and that "he did so intentionally or knowingly *while* attempting, with unlawful force or violence, to do bodily injury to" the victim. (Emphasis added). As the court of appeals stated, the instruction "places the 'while' after the mens rea language, separating the 'intentionally and knowingly' elements from the act of assault." *State v. Johnson*, 2014 UT App 161, ¶ 22, 330 P.3d 743. The court of appeals reasoned that this shift in language required the jury to find that Mr. Johnson knowingly or intentionally killed the victim, instead of that the jury find that Mr. Johnson knowingly or intentionally attempted to do bodily injury. *Id.*

¶56 This issue did not address subject matter jurisdiction or joinder, nor did it involve one of the rare instances in which a statute or rule permits *sua sponte* review of an unpreserved issue. And, while the incorrect jury instruction poses a purely legal issue, this issue is not likely to have bearing in the analysis in other cases as the alleged instructional error was specific to the instructions submitted in this case. As we noted above, an appellate court may address an unpreserved and waived issue when it is, 1) a purely legal issue, 2) that is almost certain to arise and assist in the analysis in other cases, 3) is necessary to correctly determining an issue that was properly raised, and 4) neither party is unfairly prejudiced by raising the issue at that point or neither party argues that they are unfairly prejudiced. *See supra* ¶ 51. The jury instruction in this case merely misstates the *mens rea* component of homicide by assault. This error does not implicate serious questions of statutory interpretation.

¶57  This leaves only the question of whether the issue identified by the court of appeals qualifies under the *Robison* exception. *See supra* ¶ 49. We therefore examine whether 1) there is a valid exception to preservation, 2) the jury instructions were astonishingly erroneous but undetected, 3) Mr. Johnson would be subject to great and manifest injustice if we did not reach the claim that the jury instruction was incorrect, and 4) whether any party is unfairly prejudiced by raising the issue for the first time by the court of appeals. *See supra* ¶ 49. We first determine that plain error, ineffective assistance of counsel, and exceptional circumstances do not apply here.[16] Because of this, we do not reach the rest of the *Robison* test.

¶58 The plain error exception is inapplicable here because Mr. Johnson invited any error by submitting the homicide by assault instruction to the court. *See State v. Moa*, 2012 UT 28, ¶ 27, 282 P.3d 985 ("The doctrine of invited error . . . can preclude even plain error review."). On the record, the district court noted that Mr. Johnson's counsel submitted two different homicide by assault instructions and stated: "I'm using the one that . . . quotes the statute, itself. . . . And so that's the one I am using that you submitted." Thus, Mr. Johnson submitted the instruction he now claims to be

---

[16] While we directly address the three exceptions to preservation, unpreserved arguments that jury instructions are incorrect are governed by Utah Rule of Criminal Procedure 19(e). This rule states: "Unless a party objects to an instruction or the failure to give an instruction, the instruction may not be assigned as error except to avoid a manifest injustice." UTAH R. CRIM. P. 19(e). Although we have not definitively charted the outer bounds of what constitutes "a manifest injustice" under this rule, we hold that this term incorporates the exceptions to the preservation requirement. First, "in most circumstances the term 'manifest injustice' is synonymous with the 'plain error' standard." *State v. Alinas*, 2007 UT 83, ¶ 10, 171 P.3d 1046 (citation omitted). Second, we may review an unpreserved instructional error if counsel's failure to object constitutes ineffective assistance of counsel. *See State v. Barela*, 2015 UT 22, ¶¶ 25–27, 349 P.3d 676. Finally, exceptional circumstances allow us to reach an unpreserved issue "where our failure to consider an issue that was not properly preserved for appeal would have resulted in manifest injustice." *Adoption of K.A.S.*, 2016 UT 55, ¶ 19, 390 P.3d 278 (citation omitted). For this reason, the *Robison* exception—and its analysis of exceptions to preservation—applies to unpreserved and waived issues concerning errors in jury instructions.

erroneous.[17] Because submitting an erroneous jury instruction to the court is a quintessential example of invited error, *see State v. Perdue*, 813 P.2d 1201, 1205 (Utah Ct. App. 1991), we decline to conduct a plain error review.

¶59 The ineffective assistance of counsel exception also does not apply because Mr. Johnson never raised it in his supplemental brief to the court of appeals. *Johnson*, 2014 UT App 161, ¶ 45 (Bench, S.J., dissenting). Additionally, Mr. Johnson's counsel specifically declined to make an ineffective assistance claim to this court on certiorari, instead arguing that Mr. Johnson's counsel on appeal was also his trial counsel and, therefore, could not argue ineffective assistance of counsel. Given these circumstances we will not address this claim. *See State v. Irwin*, 924 P.2d 5, 11 (Utah Ct. App. 1996) ("It may well be that the facts of the instant case would give rise to an ineffective assistance of counsel claim, but no such claim has been raised in this appeal.").

¶60 Because the plain error and the ineffective assistance of counsel exceptions to the preservation rule do not apply in this case, we finally consider the exceptional circumstances exception. As discussed above, we apply the exceptional circumstances doctrine to reach an unpreserved issue where a rare procedural anomaly either prevented an appellant from preserving an issue, or excused a failure to do so, and further factors weigh in favor of review. *Supra* ¶¶ 29–39. We apply this exception "sparingly, reserving it for the most unusual circumstances where our failure to consider an issue that was not properly preserved for appeal would . . . result[] in manifest injustice." *State v. Munguia*, 2011 UT 5, ¶ 11, 253 P.3d 1082 (alterations in original) (citation omitted).

---

[17] The court of appeals noted that there was at least some room to doubt that the district court used the instruction submitted by defense counsel because the proposed instruction was not added to the record. *Johnson*, 2014 UT App 161, ¶ 14 n.6. We cannot, therefore, compare the instruction proposed by Mr. Johnson with the instruction given to the jury. We conclude, however, that the district court's definitive statement that it would give the instruction submitted by defense counsel is sufficient to determine that the court did what it said it would do. Moreover, the party in the best position to place the proposed instruction in the record was Mr. Johnson. If we held that a record of the proposed instruction was necessary to conclude that a party invited the erroneous instruction, defendants would have a perverse incentive to keep proposed instructions out of the record in order to avoid the invited error doctrine on appeal.

¶61  In this case, neither Mr. Johnson nor the court of appeals has pointed to any procedural anomaly that hindered Mr. Johnson's ability to make a timely objection to the homicide by assault jury instruction. At best, Mr. Johnson's trial counsel inadvertently proposed an erroneous instruction and failed to detect the error and object to it.[18] But the exceptional circumstances exception "requires something much more exceptional than mere oversight by trial counsel in failing to object." *State v. Irwin*, 924 P.2d 5, 11 (Utah Ct. App. 1996); *see also State v. Pullman*, 2013 UT App 168, ¶ 27, 306 P.3d 827 (rejecting the exceptional circumstances exception because the "ordinary trial errors" raised by the defendant on appeal, such as instructional error and the improper admission of evidence, were not "exceptional, rare, or anomalous"). Indeed, if inadvertence or oversight were sufficient to meet the exceptional circumstances exception, the requirement to preserve an issue below would be consumed by the exception.

¶62 Mr. Johnson has failed to establish any rare procedural anomaly that meets the high burden of exceptional circumstances. As noted, the plain error and ineffective assistance of counsel exceptions are likewise unavailing. Because there is no valid exception to preservation, we do not address the remaining elements of the *Robison* exception to waiver. Our preservation and waiver doctrines, and the demands for procedural regularity, precluded the court of appeals from reviewing the jury instruction.

---

[18] Mr. Johnson's counsel also argues on certiorari that the supplemental briefing order itself created a rare procedural anomaly. He argues that the supplemental briefing order created a conflict of interest wherein he would have to argue against himself because Mr. Johnson's counsel on appeal was also his counsel at trial, and the order sought briefing on whether the instruction submitted by Mr. Johnson's trial counsel was erroneous. We reject this argument and will not allow counsel to create a rare procedural anomaly through his own actions. *Cf. State v. Larrabee*, 2013 UT 70, ¶ 16, 321 P.3d 1136 (refusing to allow counsel to "strategically" refuse to raise an issue at trial without the risk of failing to preserve that issue); *Patterson*, 2011 UT 68, ¶ 16, (same). If counsel believed that the supplemental briefing order created a conflict of interest, he should have withdrawn and allowed new counsel to argue the appeal. *See* UTAH R. OF PROF'L CONDUCT 1.7(a)(2) ("[A] lawyer shall not represent a client if . . . [t]here is a significant risk that the representation . . . will be materially limited by . . . a personal interest of the lawyer.").

## CONCLUSION

¶63 We hold that the court of appeals erred in overruling the trial court *sua sponte* on an issue that was neither preserved in the trial court nor argued on appeal. We reverse and remand for consideration of the other arguments that Mr. Johnson briefed, but that were not resolved by the court of appeals. *See State v. Geukgeuzian*, 2004 UT 16, ¶ 13, 86 P.3d 742 (remanding a case to the court of appeals for consideration of unresolved claims of error).

———————————

ASSOCIATE CHIEF JUSTICE LEE, concurring in the judgment:

¶64  I agree with the majority's determination that "the court of appeals erred in overruling the trial court *sua sponte* on an issue that was neither preserved in the trial court nor argued on appeal." *Supra* ¶ 63. And I applaud the majority for limiting and repudiating elements of the standard set forth in *State v. Robison*, 2006 UT 65, 147 P.3d 448, *see supra* ¶¶ 25–28, and for helpfully delineating the "writ of error" roots of our adversary system of appellate procedure, *see supra* ¶¶ 8–12. I write separately, however, because I think the court goes too far in endorsing an "appeal in equity" alternative to our adversary system on appeal. *See supra* ¶¶ 9–11. I find no basis, in particular, for the majority's endorsement of appellate discretion to consider a claim of error that was neither preserved at trial nor briefed on appeal. *See supra* ¶ 12. That discretion, as framed by the court and as presented in this case, is far too sweeping.

¶65  The "issue" addressed by the court of appeals in this case concerned the correctness of the "homicide by assault" instruction given to the jury. That was a distinct "claim of error" that was neither preserved in the district court nor raised by the appellant on appeal. And I see no basis for an appellate court to introduce that kind of "issue" *sua sponte*. I would so conclude, while providing a more fulsome repudiation of the standard in *Robison* as applied to issues (distinct *claims of error*) like the one presented here.

¶66  In the paragraphs below, I first articulate the basis on which I would decide this case—in a simple statement that appellate courts have no discretion to raise distinct claims of error that were neither preserved below nor presented on appeal. Then I outline concerns I have with the court's contrary approach, highlighting the lack of any support in the authority cited in the majority opinion for the sweeping notion of appellate discretion to introduce claims of error not raised at any point by the parties.

I

¶67 Our adversary system of justice relies on the parties to identify the "claims" presented for judicial decision. At the trial court level, we treat the plaintiff as the "master of the complaint."[1]

---

[1] *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 91 (2005) ("'[T]he plaintiff is the master of the complaint and has the option of naming only those parties the plaintiff chooses to sue . . . .'") (quoting 16 J. MOORE

(continued . . .)

That means that the plaintiff has the prerogative of identifying the claims or causes of action she seeks to sustain in court. And we honor the plaintiff's prerogative. Our courts are empowered to adjudicate only the claims or causes of action alleged by the plaintiff. In our adversary system our courts do not direct plaintiffs to advance claims they have not pled.

¶68 We would never tell a plaintiff who pleaded only a negligence claim that we think she should have framed her case in strict liability terms—and direct the parties to litigate that claim. *See Combe v. Warren's Family Drive-Inns, Inc.*, 680 P.2d 733, 736 (Utah 1984) ("A court may not grant judgment for relief" that is not "within the theory on which the case was tried," regardless of whether the evidence implies such relief). If a district court strays from "the issues [as] framed by the pleadings," "[a]ny findings . . . are a nullity." *Id.*

¶69 Indeed our law of claim preclusion dictates the opposite. It gives a party who defends against one claim arising out of a particular set of facts the right not to face an alternative claim that could have been but was not asserted earlier. *See Gilmor v. Family Link, LLC*, 2012 UT 38, ¶¶ 10, 13–14, 284 P.3d 622 (stating the elements of the law of claim preclusion). And we root that right in principles of finality and repose. *Allen v. Moyer*, 2011 UT 44, ¶ 7, 259 P.3d 1049 ("[C]laim preclusion . . . promote[s] finality and protect[s] litigants by ensuring that parties will have to litigate a controversy only once."), *overruled on other grounds by Madison v. JP Morgan Chase Bank, N.A.*, 2012 UT 51, ¶ 5 n.2, 296 P.3d 671.

¶70 Our appellate process is similar. On appeal it is the appellant who is the "master"—the party who identifies "claims" to be disposed of by the court. In appellate parlance we speak of "claims of error"—decisions made by a lower court requiring reversal of the court's judgment. *See State v. Kell*, 2002 UT 106, ¶ 10, 61 P.3d 1019 (referring to "claims of error" alleged by the appellant on appeal). Our appellate rules require the appellant to identify

---

(continued . . .)

ET AL., MOORE'S FEDERAL PRACTICE § 107.14(2)(c) (3d ed. 2005); *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164 (1997) ("[A] plaintiff, as master of the complaint, can 'choose to have the cause heard in state court'" by relying solely on state law) (citation omitted).

specific decisions—orders or judgments—that are challenged on appeal. *See* UTAH R. APP. P. 3(d) (requiring notice of appeal to designate the "judgment or order, or part thereof, appealed from"). And our case law has long held that "[a]n order not identified in the notice of appeal falls beyond our appellate jurisdiction." *In re Adoption of B.B.*, 2017 UT 59, ¶ 106, __ P.3d __; *see also Jensen v. Intermountain Power Agency*, 1999 UT 10, ¶¶ 6–9, 977 P.2d 474 (notice of appeal must identify orders for review; orders not identified are beyond the jurisdiction of the court to review).

¶71 A parallel principle applies to the appellant's briefing. Under our briefing rules the appellant's *opening brief* must identify any and all judgments or orders that are challenged on appeal. *See* UTAH R. APP. P. 24(c). The failure to raise such a challenge in the brief amounts to forfeiture. *See Brown v. Glover*, 2000 UT 89, ¶ 23, 16 P.3d 540 (claims of error "not presented in the opening brief are considered waived"). That principle is deeply embedded in our case law. We routinely decline to consider claims of error raised for the first time in a reply brief or at oral argument. *See, e.g., Kendall v. Olsen*, 2017 UT 38, ¶¶ 11–13, __ P.3d __; *Mackin v. State*, 2016 UT 47, ¶ 20 n.2, 387 P.3d 986.

¶72 These rules define the scope of the claims presented for the court's consideration on appeal. For good reasons: (a) the appellee "is entitled to know specifically which judgment[s]" or orders are "being appealed," *Jensen*, 1999 UT 10, ¶¶ 6–9 (citation omitted); (b) the appellee has a right of "repose" or reliance on the finality of decisions not challenged on appeal;[2] (c) our judges are supposed to be neutral arbiters, affording procedural fairness and evenhanded judgment to the parties, not partisan advocacy;[3] and

---

[2] *Cf. In re Baby Girl T.*, 2012 UT 78, ¶ 42, 298 P.3d 1251 (Lee, J., dissenting) (noting that the failure to police preservation rules results in "the inequity of [a party] having to defend on appeal on a ground that it had no opportunity to address at trial").

[3] *See Girard v. Appleby*, 660 P.2d 245, 247 (Utah 1983) ("[T]he interests of justice are not enhanced when the court exceeds its role as arbiter by reaching out and deciding an issue that would otherwise be dead . . . .") *modified by Meadowbrook, LLC v. Flower*, 959 P.2d 115, 119 (Utah 1998); *Limb v. Federated Milk Producers Ass'n*, 461 P.2d 290, 295 (Utah 1969) (Henriod, J., dissenting) (observing that *sua sponte* consideration of new issues would "cast[] the appellate court in the role of advocate and counselor for one side in derogation of

(continued . . .)

(d) considerations of efficiency and judicial economy are undermined by *sua sponte* injection of new claims by the court.[4]

¶73 For the above reasons we would not have allowed Mr. Johnson to raise a challenge to the "homicide by assault" jury instruction if *he* had sought to raise it on appeal for the first time at oral argument (as the court of appeals did). At that point, the time for Mr. Johnson to assert a claim of error in connection with this jury instruction was long past. Principles of finality and repose would thus have dictated a decision not to reach this question on appeal.

¶74 It is no answer to say that it was the *court of appeals* (and not Mr. Johnson) who introduced this claim of error. If an advocate for a party is barred from asserting a claim, then the court is *a fortiori* barred. Ours is an adversary system. Within it judges are sworn to follow the law in an evenhanded, objective manner. We sidestep that system when we take on a role of advocacy. *See United States v. Pryce*, 938 F.2d 1343, 1352 (D.C. Cir. 1991) (Silberman J., dissenting) ("[T]he judiciary is on *no side*. That proposition is not a technicality; it is fundamental. We judges must be strictly neutral with respect to all cases that come before us . . . .") (emphasis in original).

¶75 And in my view the decision to advance a claim for relief—either a cause of action in the district court or a claim of error on appeal—is the distinct prerogative of a party. We cross a line we should not cross when we seize the role of identifying claims we wish the parties had advanced. We cannot assert that role while maintaining a role of neutral arbiter.

¶76 I would so hold. I would repudiate the standard set forth in *Robison* to the extent it could be read (and was read by the court of appeals) to endorse the power of an appellate court to introduce claims of error not raised by an appellant.

¶77 In so doing I would leave room for the notion of an appellate prerogative of seeking supplemental briefing on issues or

---

(continued . . .)

equal empathy for the other" in a manner that "at least suggests some sort of preferential treatment").

[4] *Cf. Patterson v. Patterson*, 2011 UT 68, ¶ 15, 266 P.3d 828 (explaining that the law of preservation avoids unnecessary remands for factual inquiries, retrials, and subsequent appeals).

arguments *of relevance to the disposition of a claim that is properly before the court. See supra* ¶ 14 n.2 (indicating that "new *arguments*, when brought under a properly preserved issue or theory, do not require an exception to preservation"). That, as the majority indicates, is a long-settled practice. In keeping with our role in the adversary system, we must also acknowledge our duty to pronounce correct principles of law. And to fulfill that duty we may occasionally request additional argument or analysis on issues necessarily implicated by the claims that are presented for our decision.

¶78 But that is a different matter than the one presented here. No claim presented for decision requires us to assess the correctness of the "homicide by assault" instruction. And for that reason I see no basis for the majority's decision to expound at length on the standards governing our decision to request supplemental briefing on issues necessarily implicated by the claims briefed for our decision. I would save that for another day. I would simply hold that the court of appeals erred in *sua sponte* raising a claim of error that was neither preserved nor presented by the defendant on appeal.

II

¶79 The majority echoes many of the principles discussed above. It reinforces the "dominance" of the adversary system and concludes that our appellate system "more closely resembl[es] the writ-of-error model" of review. *Supra* ¶¶ 9–10. And it repudiates some of the premises of the *Robison* standard for *sua sponte* consideration of "issues" not preserved or raised by the parties.

¶80 To that extent I agree with the majority. Yet the court also presents an alternative "model" of appellate review—the "appeal in equity" approach, which was embraced historically by certain courts of equity. *Supra* ¶ 9. The majority says that "'[a]ppellate courts in equity were free to consider any issue de novo' and 'developed flexible procedures to address the needs of individual cases.'" *Supra* ¶ 9 (quoting Barry A. Miller, *Sua Sponte Appellate Rulings: When Courts Deprive Litigants of an Opportunity to Be Heard*, 39 SAN DIEGO L. REV. 1253, 1263 (2002)). And it cites cases and commentary in support of the proposition that our appellate system incorporates components of both models. The upshot, in the majority's view, is that American appellate courts "wrestle[] with the correct balance between law and equity and the scope of review on appeal" and retain extensive discretion to raise new "issues" not preserved or argued by the parties. *See supra* ¶ 11.

¶81 I think the majority understates the degree to which our American appellate system has embraced the adversarial ("writ of error") model. And it overstates the matter quite dramatically to suggest that we retain the discretion of a court exercising power over an "appeal in equity." Our appellate system looks nothing like the "appeal in equity" model described by the majority. We have never left our appellate courts "free to consider any issue de novo" regardless of whether it was preserved or raised by the parties. Certainly we have not endorsed the majority's implicit premise that appellate courts retain the authority to identify *claims of error* not raised by an appellant—to root around in the record in search of a decision made by the trial court that offends our sense of fairness, and thus our confidence in the "equity" of the proceeding below.

¶82 The majority presents purportedly contrary authority. But much of the cited authority is taken out of context.[5] Some of the cited cases address only the court's authority to embrace exceptions to the law of preservation, *see State v. Holgate*, 2000 UT 74, ¶ 13, 10 P.3d 346, or the court's power to consider alternative evidentiary inferences not expressly advanced by the parties, *see Salt Lake City v. Carrera*, 2015 UT 73, ¶ 17, 358 P.3d 1067. Other cited cases establish only the modest authority to seek additional argument or analysis deemed

---

[5] Much of the confusion in this field stems from imprecision in terminology. Sometimes courts use the term "issue" to mean new arguments or new analysis of relevance to the disposition of claims properly presented. And that seems fine. But the majority speaks extensively of the appellate discretion to address "issues" not preserved or raised by the parties. As presented here, the new "issue" is a brand new claim of error. It is true that "Utah courts have conflated the words 'issue,' 'claim,' 'argument,' and 'matter,'" *Patterson v, Patterson*, 2011 UT 68, ¶ 15, 266 P.3d 828, and that differentiating between these categories proves elusive. But "issue," as the majority uses it, is also elusive. The majority uses the term "issue" to refer to the *sua sponte* discretion to address new claims of error while citing predominantly cases dealing with new arguments or analysis of relevance to claims properly before the court. The discretion to consider these types of error does not comport with caselaw, especially in this state. And I think we should disclaim it categorically.

necessary to the disposition of claims properly raised by the parties.[6] We may well have that authority. But that is not the question presented here.[7] Here we are confronted with the question of an appellate court's authority to identify a brand new claim of error—a jury instruction never objected to, not raised on appeal by the defendant, and not necessary to the disposition of claims properly before the court.

¶83  I find very little precedent for that kind of sweeping power. I do not doubt that American courts have *occasionally* taken upon themselves that sort of discretion. But it strikes me as problematic for them to do so—for all of the reasons noted above. *See supra* ¶¶ 67–78. And I would not endorse that prerogative here.

¶84  I would hold that the decision of which *claims of error* to advance on appeal is a matter for the appellant. And I would expressly foreclose our appellate courts from identifying new claims of error *sua sponte*.

---

[6] *See Patterson*, 2011 UT 68, ¶¶ 10–21 (considering the applicability of a controlling statute not preserved below); *United States v. Burke*, 504 U.S. 229, 246 (1992) (Scalia, J., concurring) (concluding that the Court should have invalidated an IRS regulation that both parties relied upon but that represented an unreasonable interpretation of the controlling statute); *Davis v. United States*, 512 U.S 452, 464 (1994) (Scalia, J., concurring) (asserting that the Court could base its decision on a controlling statute not raised by the parties).

[7] We can imagine a case in which the distinction between a new *claim* and *additional analysis* on existing claims is a close call. *See, e.g., Patterson*, 2011 UT 68, ¶ 15 (suggesting that the line between a new issue and additional analysis on an existing issue may not always be clear). But this is not one of those cases. The correctness of the homicide-by-assault jury instruction is unquestionably a distinct claim from those presented by the parties.