**2022 UT App 19**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
EARON WILLIAM EDWARD LISENBEE,
Appellant.

Opinion
No. 20200155-CA
Filed February 10, 2022

Third District Court, Salt Lake Department
The Honorable Royal I. Hansen
No. 161904667

Gregory W. Stevens, Attorney for Appellant

Sean D. Reyes and Thomas Brunker, Attorneys
for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES GREGORY K. ORME and RYAN D. TENNEY concurred.

HARRIS, Judge:

¶1 Earon Lisenbee brutally attacked a friend after a disagreement over the status of their relationship, inflicting serious permanent injuries and nearly causing her death. As a result of the attack, Lisenbee was charged with, among other things, attempted murder. After a three-day trial, a jury convicted Lisenbee of attempted murder. Lisenbee now appeals that conviction, arguing that his trial attorney rendered ineffective assistance by failing to object to allegedly erroneous jury instructions. We affirm.

BACKGROUND[1]

¶2    Lisenbee and Rebecca[2] had been working on some artwork, and Lisenbee invited Rebecca over to his apartment, ostensibly to discuss that artwork. Shortly after Rebecca arrived at the apartment, an argument ensued about the status of their relationship, with Lisenbee expressing that he wanted to be more than just friends. At that point, Rebecca attempted to leave the apartment and began making her way to the front door, but Lisenbee pushed her back and prevented her from leaving. Due to the severity of her head injuries, Rebecca remembers very little about what came next. But she does remember that Lisenbee pinned her to the ground, by placing his knee on her chest, and hit her with his fists. She also remembers that at one point, Lisenbee stopped hitting her with his fists and instead began hitting her in the face and ribs with something shiny, which she believed was an exercise weight.

¶3    Sometime after the attack, Lisenbee called a friend (Friend) and said, "I think I killed her." Thinking it was a joke, Friend initially hung up. Lisenbee continued to call Friend, and during these various phone calls he told Friend that he had "beat her with a hammer" and that he wanted Friend's help disposing of her body. During one of the calls, Friend could hear "somebody gurgling on blood" in the background; at that point, Friend became concerned that someone was actually hurt and called the police. Around this same time, Lisenbee also received

---

1. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Rosen*, 2021 UT App 32, n.1, 484 P.3d 1225 (quotation simplified).

2. A pseudonym.

a text message from another friend asking how he was doing, to which Lisenbee replied, "I just murder" and "not lying."

¶4     When police arrived at Lisenbee's apartment, they observed broken glass and blood on the floor, and it was "immediately evident" to them that "something bad . . . had taken place." Police eventually found Lisenbee and Rebecca inside a locked bedroom, with Rebecca unconscious on the floor and Lisenbee lying down next to her. Both Lisenbee and Rebecca were "covered with blood," and Rebecca's face was beaten so badly that it appeared "almost flat," as if "the orbital bones were caved in." Police also observed multiple teeth lying on the bedroom floor. Rebecca was immediately rushed to the hospital, and police took Lisenbee into custody. Later, during a search of the apartment, police found a bloody hammer concealed underneath a pair of shorts in the bedroom closet.

¶5     After investigation, the State charged Lisenbee with attempted murder, aggravated kidnapping, mayhem, and assault. The case proceeded to a jury trial, which lasted three days. At trial, the State presented testimony from Rebecca, Friend, several law enforcement officers, and various medical professionals who had treated Rebecca's injuries. In addition to testifying about what she remembered regarding the attack, Rebecca described the injuries she had sustained: her right arm and several fingers were broken, as was "every single bone" in her face; she had three hematomas—"big balls of pus and blood"—on her head; and all the teeth on the right side of her mouth were knocked out. Rebecca testified that, as a result of her injuries, she has "a hard time breathing" and "can't sleep more than an hour at a time," that she is now blind in her right eye, and that she "feel[s] pain all the time." In addition to confirming the extent and severity of Rebecca's injuries, the physicians who treated Rebecca testified that had she not received timely treatment, she would have died.

¶6  After presentation of the evidence, the trial court instructed the jury. With regard to the attempted murder charge, the court's instruction stated that the jury could not convict Lisenbee unless it was able to find, beyond a reasonable doubt, that Lisenbee had "[i]ntentionally or knowingly attempted to cause the death of [Rebecca] and the defense of intoxication does not apply." And the instruction for attempt stated that:

> A person is guilty of an attempt to commit a crime if he:
>
>     a. Engages in conduct constituting a substantial step toward the commission of the crime; and
>
>     b. Intends to commit the crime; or
>
>     c. When causing a particular result is an element of the crime, he acts with an awareness that his conduct is reasonably certain to cause that result.

The attempt instruction also stated that "[c]onduct constitutes a substantial step if it strongly corroborates the actor's mental state."

¶7  The jury ultimately acquitted Lisenbee of mayhem, but convicted him of attempted murder, aggravated kidnapping, and assault. Later, the trial court sentenced Lisenbee to prison.

ISSUE AND STANDARD OF REVIEW

¶8  Lisenbee now appeals his conviction for attempted murder, and asserts that his trial attorney rendered ineffective

assistance by failing to object to allegedly erroneous jury instructions regarding the attempted murder charge.[3] "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Beckering*, 2015 UT App 53, ¶ 18, 346 P.3d 672 (quotation simplified).

## ANALYSIS

¶9     To establish that his attorney was ineffective, Lisenbee must show both (1) that his attorney's performance was deficient, in that it "fell below an objective standard of reasonableness," and (2) that this deficient performance "prejudiced the defense" such that "there is a reasonable probability that, but for counsel's unprofessional errors, the

---

3. In his principal brief, Lisenbee also claims that the trial court committed plain error by giving the allegedly erroneous jury instruction relating to the attempted murder charge. In his reply brief, however, Lisenbee concedes that, because his trial attorney submitted proposed jury instructions that included the same language to which he now ascribes error, he invited any error and is therefore precluded from asserting plain error on appeal. *See State v. Perdue*, 813 P.2d 1201, 1205 (Utah Ct. App. 1991) (holding that invited error precluded a party—outside the context of an ineffective assistance claim—from appealing a jury instruction that the party requested); *see also State v. Popp*, 2019 UT App 173, ¶ 23, 453 P.3d 657 (stating that "in the context of jury instructions . . . an instruction is not subject even to plain error review if counsel, in response to a question from the court about whether counsel has any objection to the instruction, answers in the negative"). Accordingly, we need not consider any claim that the trial court committed plain error.

result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *accord State v. Scott*, 2020 UT 13, ¶ 28, 462 P.3d 350; *State v. Ray*, 2020 UT 12, ¶ 24, 469 P.3d 871. "A defendant must satisfy both parts of this test in order to successfully establish ineffective assistance." *State v. Whytock*, 2020 UT App 107, ¶ 26, 469 P.3d 1150. Thus, "it is unnecessary for a court to address both components of the inquiry if we determine that a defendant has made an insufficient showing on one." *Id.* (quotation simplified).

¶10 The first part of the test requires Lisenbee to show that his attorney's performance "fell below an objective standard of reasonableness." *Scott*, 2020 UT 13, ¶ 31 (quotation simplified). In evaluating counsel's actions, courts will often look to whether those actions were motivated by a reasonable trial strategy. *See id.* ¶ 35 ("[T]he performance inquiry will often include an analysis of whether there could have been a sound strategic reason for counsel's actions."). And while "the ultimate question is not whether there was a possible strategic reason for counsel's conduct, but instead whether that conduct was objectively reasonable," *id.*, "[i]f it appears counsel's actions could have been intended to further a reasonable strategy, a defendant has necessarily failed to show unreasonable performance," *Ray*, 2020 UT 12, ¶ 34.

¶11 Lisenbee claims that his attorney performed deficiently by failing to object to erroneous jury instructions regarding the attempted murder charge. Specifically, he claims that the instruction erroneously permitted the jury to convict him of attempted murder based on a *knowing* mental state—as opposed to an *intentional* mental state—in violation of our supreme court's guidance in *State v. Casey*, 2003 UT 55, 82 P.3d 1106.[4]

---

4. In addition to *Casey*, Lisenbee relies on *State v. Apodaca*, 2018 UT App 131, 428 P.3d 99, *aff'd*, 2019 UT 54, 448 P.3d 1255, but

(continued…)

Thus, because the jury instructions allegedly "set[] a lower threshold of mental culpability than that which [was] required," Lisenbee asserts that the instructions were erroneous and that his trial attorney performed deficiently by not objecting to them.

¶12 As noted above, the court instructed the jury that it could not convict Lisenbee of attempted murder unless it was able to find that he had "[i]ntentionally or knowingly attempted to cause the death of [Rebecca]." And the court further instructed the jury that a person is guilty of an attempt crime if he "[e]ngages in conduct constituting a substantial step toward the commission of the crime" and either "[i]ntends to commit the crime" or "acts with an awareness that his conduct is reasonably certain to cause that result." Lisenbee correctly asserts that these instructions allowed the jury to convict him of attempted murder based on a knowing mental state. But Lisenbee is incorrect when he asserts that such instructions are contrary to Utah law applicable at the time of the offense.

¶13 In *Casey*, the defendant was charged with, among other things, attempted murder. *See id.* ¶ 6. Regarding that charge, the trial court instructed the jury that the required mental state was "intentionally or knowingly." *Id.* ¶ 8 (quotation simplified). The

---

(…continued)

that case is easily distinguishable. In *Apodaca*, the defendant was charged with aggravated robbery, a crime that—unlike the murder crime charged here, which allows conviction for both knowing and intentional conduct, *see* Utah Code Ann. § 76-5-203(2)(a) (LexisNexis 2017)—allows conviction only for intentional conduct. *See* 2018 UT App 131, ¶ 76. Moreover, the defendant in *Apodaca* was not charged with an attempt crime, and therefore the attempt statute—the statute at issue in *Casey*—did not factor into the court's analysis. *See id.* ¶ 68. Thus, *Apodaca* is of no assistance to Lisenbee in this case.

jury found the defendant guilty of attempted murder and the defendant appealed that conviction, arguing that the jury instructions were erroneous because they "permitted the jurors to find [the defendant] guilty if they determined he acted with an intentional *or* knowing state of mind." *Id.* ¶ 9. On appeal, our supreme court held that "an attempted murder conviction requires proof that the defendant acted intentionally," not just knowingly. *See id.* ¶ 12.

¶14　In so holding, however, the court applied a version of the attempt statute that has since been materially amended. *See id.* ¶¶ 12, 15. At the time *Casey* was decided, our attempt statute stated that "a person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for the commission of the offense, he engages in conduct constituting a substantial step toward commission of the offense." *See* Utah Code Ann. § 76-4-101(1) (LexisNexis 2003). The statute further clarified that "conduct does not constitute a substantial step unless it is strongly corroborative of the actor's *intent* to commit the offense." *Id.* § 76-4-101(2) (emphasis added). Relying on this language, the *Casey* court ultimately concluded that, "to be convicted of attempted murder, a defendant's actions must constitute a substantial step toward causing the death of another, and the substantial step must indicate his or her intent to commit the crime." *Casey*, 2003 UT 55, ¶ 15. In particular, the court noted that Utah's attempt statute, which was "based on" the Model Penal Code's (MPC) definition of attempt, nevertheless did not parallel the MPC when it came to *mens rea*. *See id.* ¶¶ 26–29.

¶15　Under the MPC's "formulation of attempt," a person could "be convicted of an attempt crime if the person acted in one of two ways: 'purposely engaging in conduct,' *or*, 'when causing a particular result is an element of the crime, doing anything with the purpose of causing or with the belief that it will cause such result without further conduct on his part.'" *Id.* ¶ 28 (quoting Model Penal Code § 5.01(1)(a), (b) (1985)). Under

Utah's attempt statute, by contrast, intentional conduct was required. *Id.* ¶ 26; *see also id.* ¶ 29 ("Though the [MPC] would allow a conviction for attempt based on knowledge alone, Utah's attempt statute does not."). The court concluded its analysis by noting that, "[b]ecause the Utah legislature did not adopt the particular wording of the [MPC] that would have allowed a knowing attempt, we assume that it did so deliberately in order to limit the reach of the attempt statute to intentional conduct." *Id.* ¶ 29.

¶16    In the wake of *Casey*, however, our legislature amended the attempt statute, specifically adding language similar to the missing MPC language whose absence the *Casey* court had found notable. *See* Criminal Offense Attempt Amendments, ch. 154, § 1, 2004 Utah Laws 625, 625; *see also Casey*, 2003 UT 55, ¶¶ 26–29. The post-amendment version of the statute—which was in effect at the time of the events giving rise to this case—states that "a person is guilty of an attempt to commit a crime if he . . . engages in conduct constituting a substantial step toward commission of the crime" and either "intends to commit the crime" or, "*when causing a particular result is an element of the crime, he acts with an awareness that his conduct is reasonably certain to cause that result*." *See* Utah Code Ann. § 76-4-101(1) (LexisNexis 2017) (emphasis added). The statute also now states that "conduct constitutes a substantial step if it *strongly corroborates the actor's mental state*." *Id.* § 76-4-101(2) (emphasis added).

¶17    By amending the attempt statute in these particulars, the legislature explicitly allowed for an attempt crime to be based on a knowing mental state. Indeed, the language used in the amended statute tracks the statutory definition of "knowingly." *Compare id.* § 76-2-103(2) ("A person acts knowingly . . . with respect to a result of his conduct when he is *aware that his conduct is reasonably certain to cause the result*." (emphasis added)), *with id.* § 76-4-101(1)(b)(ii) (allowing an attempt conviction when the defendant "acts with an *awareness that his conduct is reasonably*

*certain to cause that result*" (emphasis added)). The attempt statute in effect at the time of Lisenbee's charged conduct therefore permitted a conviction based on a "knowing" mental state, so long as causing a particular result is an element of the underlying crime and the defendant acts with an awareness (i.e., knowingly) that the conduct is reasonably certain to cause that result. And in Lisenbee's case, causing a particular result—death—is in fact one of the elements of murder. *See id.* § 76-5-203(2)(a) ("Criminal homicide constitutes murder if . . . the actor intentionally or knowingly causes the death of another . . . .").

¶18    Thus, *Casey*'s holding—that "an attempted murder conviction requires proof that the defendant acted intentionally," *see Casey*, 2003 UT 55, ¶ 12—has been superseded by statutory amendment. Since 2004, a defendant can be convicted, under Utah law, for attempted murder by acting either intentionally or knowingly. The jury instructions given by the trial court in this case were therefore correct in this regard, and any *Casey*-based objection to them would not have been well-taken. Under these circumstances, Lisenbee's trial attorney did not perform deficiently by forgoing an objection to the jury instructions regarding the attempted murder charge. *See State v. Whytock*, 2020 UT App 107, ¶ 43, 469 P.3d 1150 ("[W]hen seeking particular relief would be futile, an attorney does not perform deficiently by failing to seek it."). Accordingly, Lisenbee has not met his burden of demonstrating that his attorney rendered constitutionally ineffective assistance.[5]

---

5. Lisenbee also argues—for the first time in his reply brief—that because the information filed by the State specifically alleged that Lisenbee "intentionally attempted to cause the death" of Rebecca, and said nothing about any potential conviction for "knowing" conduct, Lisenbee's trial attorney was ineffective for "fail[ing] to require the State to prove what it actually charged."

(continued…)

CONCLUSION

¶19    Because the jury instructions Lisenbee identifies were legally correct, Lisenbee's trial attorney did not render ineffective assistance by not objecting to them. On that basis, we reject Lisenbee's ineffective assistance claim, and affirm his conviction.

————————

(…continued)

We need not reach any decision on the merits of this argument, however, because Lisenbee waived it by raising it for the first time in his reply brief. *See State v. Johnson*, 2017 UT 76, ¶ 16, 416 P.3d 443 ("When a party fails to raise and argue an issue on appeal, or raises it for the first time in a reply brief, that issue is waived and will typically not be addressed by the appellate court."); *see also Brown v. Glover*, 2000 UT 89, ¶ 23, 16 P.3d 540 (stating that the purpose behind the waiver rule "is to prevent the resulting unfairness to the respondent if an argument or issue was first raised in the reply brief and the respondent had no opportunity to respond").