*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2014 UT 54**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

LANA MAWHINNEY, CHRISTINE MCCLORY, and JAMES WHITEHEAD,
*Petitioners,*

*v.*

CITY OF DRAPER and the TRAVERSE RIDGE SPECIAL SERVICE DISTRICT,
*Respondents.*

Case No. 20140828
Filed November 25, 2014

Original Proceeding in this Court

Attorneys:

Lana Mawhinney, Christine McClory, and James Whitehead,
Draper, pro se petitioners

Douglas J. Ahlstrom, Benjamin C. Rasmussen, Draper,
for Draper City respondent

J. Craig Smith, Kathryn J. Steffey, Steven R. Schaefermeyer, Salt
Lake City, for Traverse Ridge Special Services District respondent

JUSTICE PARRISH authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, JUSTICE DURHAM, JUSTICE LEE,
and JUDGE VOROS joined.

ASSOCIATE CHIEF JUSTICE NEHRING does not participate herein;
COURT OF APPEALS JUDGE J. FREDERIC VOROS, JR. sat.

JUSTICE PARRISH, opinion of the Court:

### INTRODUCTION

¶1 On petition for writ of extraordinary relief, petitioners
Lana Mawhinney, Christine McClory, and James Whitehead
(collectively, Petitioners) ask us to order the City of Draper (City) to
certify their petition for referendum. Specifically, they seek to refer
Resolution No. TRSSD 14-02 (Resolution) to the voters of the
Traverse Ridge Special Service District (District) in the November
2014 general election. The Resolution, enacted on June 24, 2014,
levies a tax on the property within the District.

¶2    The City refused to certify the petition, asserting that the tax levy was a nonreferable administrative action and that the subjurisdictional referendum statute, pursuant to which the petitioners sought the referendum, unconstitutionally limits the number of Draper City residents who are entitled to vote on the issue. We grant Petitioners' requested relief because the Resolution was improperly rejected by the City. The Resolution, which levies a tax, is properly referable to the voters because it is legislative in nature. And we are unpersuaded by the City's constitutional challenge to the subjurisdictional referendum statute.

## BACKGROUND

¶3    The City of Draper created the Traverse Ridge Special Service District in 1999 to provide additional services to property located within its boundaries. These consist of "transportation, including snow removal, street lighting services, repairing and maintaining roads, sweeping and disposal service." In 2001, by a vote of six to two, the voters of the District authorized the City to levy and collect taxes to fund the District's operations. They passed the following proposition:

> Shall the City Council of Draper City be authorized to annually levy and collect taxes from the owners of property within the Traverse Ridge Special Service District according to the assessed valuation of such property based on a mill levy not exceeding 10 mills, for the purpose of providing transportation, including snow removal, street lighting services, repairing and maintaining roads, sweeping and disposal services and facilities within the boundaries of the Traverse Ridge Special Service District?

That same year, "the Board of Directors of the Traverse Ridge Special Service District" "passed and adopted" Resolution No. 01-02. That resolution "established" a "Certified Tax Rate" for the District.

¶4    On June 24, 2014, the "City Council of Draper City, acting as the Board of Directors of the Traverse Ridge Special Service District," "passed and adopted" Resolution No. TRSSD 14-02, which "established" a 2014 "Equalized Property Tax Rate" for all property located in the District. Five residents collected verified voter signatures and asked the City to refer the Resolution to the voters of the District. Nevertheless, the City rejected the referendum petition, asserting that "referendums challenging actions taken by special service districts are not authorized by the Utah Constitution."

Petitioners filed in this court a petition for writ of extraordinary relief, pursuant to Utah Code section 20A-7-607(4)(a), and a motion for emergency relief, pursuant to rule 23C of the Utah Rules of Appellate Procedure. We heard oral argument and issued an order granting the requested relief on September 17, 2014, noting that this opinion would follow. We have jurisdiction under Utah Code section 78A-3-102(2).

## STANDARD OF REVIEW

¶5    The Utah Constitution vests this court with "original jurisdiction to issue all extraordinary writs."[1] A petition for extraordinary writ is appropriate where petitioners possess "no other plain, speedy, or adequate remedy."[2] However, the decision to grant such a petition "lies within the sound discretion of this court."[3]

¶6    Petitioners' request for extraordinary relief turns on whether the City of Draper properly concluded that the Resolution was not referable to the voters. Our review is therefore "confined to discerning the proper interpretation of . . . the Utah Code" and the Utah Constitution.[4] We undertake this review applying a standard of correctness, granting no deference to the City's legal conclusions.[5]

## ANALYSIS

¶7    Petitioners seek to refer Resolution No. TRSSD 14-02 to the voters of the Traverse Ridge Special Service District. Respondents, City of Draper and the Traverse Ridge Special Service District,[6] object, arguing that the Resolution is not referable. We hold that the Resolution—which levies a tax—is legislative in nature and is therefore properly referable to the voters of the District.

¶8    Our analysis proceeds in three parts: First, we reiterate our test for identifying legislative actions in the context of the people's

---

[1] UTAH CONST. art. VIII, § 3.

[2] *Krejci v. City of Saratoga Springs*, 2013 UT 74, ¶ 7, 322 P.3d 662 (citing UTAH R. APP. P. 19(b)(4)).

[3] *Proulx v. Salt Lake City Recorder*, 2013 UT 2, ¶ 5, 297 P.3d 573 (internal quotation marks omitted).

[4] *Mouty v. Sandy City Recorder*, 2005 UT 41, ¶ 11, 122 P.3d 521.

[5] *Id.*

[6] While we refer to the respondents in this case collectively as the City, we recognize that each retains distinct legal significance.

legislative power. Second, we hold that levying a tax is legislative in nature. Finally, we address three additional arguments raised by the City in urging us to deny the petition.

# I. THE PEOPLE'S LEGISLATIVE POWER

¶9    Article VI, section 1 of the Utah Constitution vests "[t]he Legislative power of the State" in "the Legislature" and "the people." Because our government is one of "distinct departments," neither the Legislature nor the people, exercising legislative power through an initiative or referendum, may "exercise any functions appertaining to either of the" executive or judicial departments of government.[7] In essence, the people's legislative power is constrained to that which is legislative in nature. As a result, executive and administrative actions are not referable.[8]

¶10    Some referenda are easy to sustain as legislative in nature because they challenge the actions of a strictly legislative body. For example, in *Mouty v. Sandy City Recorder*, we held that a referendum on an ordinance properly enacted by a city council in a municipality with a council-mayor form of government is "necessarily legislative" because that form of government specifies that the city council may exercise only the legislative power of the municipality.[9]

¶11 Some municipalities, however, employ a form of government with commingled powers.[10] Unlike the council-mayor form of government at issue in *Mouty*, these forms of government vest both executive and legislative powers in one body.[11] With municipal powers thus commingled, as is the case here for Draper City,[12] we must identify an exercise of municipal power as legislative before the people may seek to overturn it through a referendum. And unfortunately, it is not always possible to make this

---

[7] UTAH CONST. art. V, § 1.

[8] *Carter v. Lehi City*, 2012 UT 2, ¶ 17, 269 P.3d 141.

[9] *Mouty v. Sandy City Recorder*, 2005 UT 41, ¶ 28, 122 P.3d 521. The council-mayor form of local government is set out in Utah Code sections 10-3b-201 to -205.

[10] *See* UTAH CODE §§ 10-3b-301 to -303, -401 to -403.

[11] *Compare Id.* § 10-3b-201 (vesting municipal powers in two "separate, independent, and equal branches"), *with id.* §§ 10-3b-301, -401 (vesting municipal powers in the council).

[12] DRAPER CITY, UTAH, MUNICIPAL CODE §§ 2-1-010 to -030.

identification through application of bright-line rules. In *Carter v. Lehi City*, we articulated a general framework for determining whether an initiative or referendum is properly identified as an exercise of legislative power.[13]

¶12   We recognized two key hallmarks of legislative power: general applicability and policy weighing.[14] First, legislative power produces generally applicable laws—laws that "appl[y] to everyone within [a] geographical area . . . or to everyone within a category of persons engaged in a particular activity."[15] While a geographical area or category may be quite large, an action may apply to only a small geographical area or category and still be generally applicable. For example, we held in *Carter* that a ballot initiative setting a pay cap and residency requirement for only a handful of city employees was nevertheless legislative in nature.[16] Similarly, in *Mouty*, we held that a zoning amendment that affected only a one-hundred-acre parcel of land was legislative.[17] In these hard cases where governmental action affects only a small area or a few people, we have noted that general applicability can be evaluated temporally—by asking whether the action "governs all future cases falling under its provisions and not just specified individuals."[18]

¶13   The second hallmark of legislative decision-making is that it involves "weigh[ing] broad policy considerations, not the specific facts of individual cases."[19] In exercising legislative power, therefore, a legislative body must "consider[] the wide range of policy considerations of relevance to all who fall within the scope of a particular law."[20]

¶14   Additionally, because "the people's legislative power is the same—and is coextensive with the power delegated to the [L]egislature—regardless of whether that power is wielded on a

---

[13] *Carter*, 2012 UT 2, ¶¶ 32–50.

[14] *Id.* ¶ 34.

[15] *Id.* ¶ 36 (internal quotation marks omitted).

[16] *Id.* ¶¶ 76–80.

[17] *Mouty*, 2005 UT 41, ¶¶ 2–6, 28.

[18] *Carter*, 2012 UT 2, ¶ 52 (footnote omitted) (internal quotation marks omitted).

[19] *Id.* ¶ 38.

[20] *Id.*

statewide or local level," it is helpful to compare an action in question to those actions undertaken by the Utah Legislature pursuant to the specific powers granted to that body by the Utah Constitution.[21] And those powers that have traditionally been the province of the Utah Legislature, though not expressly discussed in the Utah Constitution, are likewise helpful in analyzing whether an action is legislative in nature.

## II. A TAX LEVY IS LEGISLATIVE

¶15    In this case, Petitioners seek to refer the Resolution to the voters of the District while the City argues that the Resolution is not referable because it does not represent an exercise of legislative power. The Resolution was "passed and adopted by the City Council of Draper City, acting as the Board of Directors of the Traverse Ridge Special Service District."[22] The Resolution "establishe[s]" the District's 2014 property tax rate. In short, the Resolution levies a tax upon the property owners in the District. And levying a tax is a quintessential expression of legislative power.

¶16    First, this levied tax is generally applicable. The tax rate established for the District applies to all property located in the District's geographical boundaries. The District contains several thousand acres, much more than the one-hundred-acre parcel effected in *Mouty*.[23] Further, the tax applies to all who own property in the District at the time the tax is due, regardless of whether they owned such property at the time the tax was enacted.

¶17 Second, deciding whether to levy the tax required weighing broad and competing policy concerns. The members of the City Council of Draper City were required to weigh the need for and

---

[21] *Id.* ¶ 31.

[22] At oral argument some members of this court expressed concern about whether the members of the Draper City Council, acting as the Board of Directors of the Traverse Ridge Special Service District, properly enacted the Resolution. We do not address this issue because neither party contends that the City Council lacked authority to pass the Resolution and levy the tax. Moreover, the propriety of a legislative action does not determine its referablity. To hold otherwise would prevent the people from using their legislative power to overturn—or ratify—*ultra vires* legislative action.

[23] *Mouty v. Sandy City Recorder*, 2005 UT 41, ¶¶ 2–6, 28, 122 P.3d 521.

benefit of the services to be provided to the property owners in the District against the tax burden to be imposed. It also required that the council anticipate the financial needs of the District in the coming year and consider whether the District should accrue reserves for future projects. Finally, they had to consider the possible implications of lowering the tax when future needs might require a subsequent tax increase.[24] In short, the selection of the tax rate represents a conscious policy choice adopted after weighing the benefits and burdens of various tax rates.

¶18 Our conclusion that levying a tax is an exercise of legislative power is consistent with the fact that levying taxes is a power given to the Legislature by the Utah Constitution.[25] And it is a power the Legislature has traditionally exercised.[26] We hold, therefore, that levying a tax is a legislative action that is properly referable to the voters.

## III. THE CITY'S OTHER ARGUMENTS ARE UNPERSUASIVE

¶19 The City raises three additional arguments in support of its position that the Resolution is not referable: First, the City argues that the Resolution is not a tax levy. Second, the City argues that a referendum on the Resolution violates the Utah Constitution because it relies upon an unconstitutional statutory provision that would limit the number of voters who are entitled to vote on the issue. Third, the City argues that limiting the referendum to District residents disenfranchises non-District voters within the City because the City may be impacted financially. We are unpersuaded by these arguments.

---

[24] *See* UTAH CODE §§ 59-2-919, -924 (requiring notice and public hearing when a proposed tax will increase revenue).

[25] *See, e.g.*, UTAH CONST. art. XIII, § 2(5) ("The Legislature may by statute determine the manner and extent of taxing or exempting intangible property . . . ."); *id.* art. XIII, § 4(1) ("Nothing in this Constitution may be construed to prevent the Legislature from providing by statute for taxes other than the property tax and for deductions, exemptions, and offsets from those other taxes."); *id.* art. XIII, § 5(1) ("The Legislature shall provide by statute for an annual tax sufficient, with other revenues, to defray the estimated ordinary expenses of the State for each fiscal year.").

[26] *See, e.g.*, UTAH CODE § 59-10-104 (imposing an individual income tax of 5%); *id.* § 59-12-103 (imposing sales and use tax rates).

## A. The Resolution Is a Tax Levy

¶20    The City argues that the Resolution does not levy a tax, but instead represents only an administrative implementation of an already existing tax. Levying a tax, the City claims, requires a tax increase. But the City's argument is inconsistent with the actions undertaken and the statutory framework on which it relies.

¶21    First, the City's argument is belied by the text of the Resolution itself and past City and District resolutions. The City has proffered no evidence that it levied a tax in 2001 that was to continue year after year. And the proposition put to the voters in 2001 indicates the contrary. It reads: "Shall the City Council of Draper City be authorized to annually levy and collect taxes from the owners of property located within the Traverse Ridge Special Service District . . . ?" Under this language, taxing authority was granted, but no tax was levied. And the taxing authority granted was for an annual tax levy, not a levy to continue in perpetuity.[27] Moreover, the resolution proffered by the City as the initial tax levy in 2001 is virtually indistinguishable from the 2014 tax levy at issue here. The only conclusion to be drawn from the text of these documents is that the City was granted taxing power by the people in 2001 and has since then "annually lev[ied] and collect[ed] taxes" pursuant thereto.

¶22    The City also argues that the Resolution does not qualify as a tax levy because it was not required to provide notice and public hearing under Utah Code section 59-2-919(2), a process commonly known as Truth in Taxation.[28] That subsection states that "[a] taxing entity may not levy a tax rate *that exceeds* the taxing entity's certified tax rate unless the taxing entity meets" certain notice and hearing requirements.[29] The phrase "that exceeds" is "defining, or restrictive"—it identifies those tax levies requiring

---

[27] Indeed, the Legislature does not allow taxing entities to levy perpetual property taxes. *See* UTAH CODE § 59-2-912 (requiring each taxing entity "before June 22 of each year" to "adopt" and "report the [tax] rate and levy . . . to the county auditor").

[28] *Truth in Taxation*, UTAH STATE TAX COMMISSION—PROPERTY TAX DIVISION (last updated Jan. 8, 2013), http://propertytax.utah.gov/ property-tax-rates/truth-in-taxation/truth-in-taxation-process.

[29] UTAH CODE § 59-2-919(2) (emphasis added).

notice and hearing.[30] But it does not define what constitutes a tax levy.

¶23    The City's argument also is inconsistent with an earlier section in the same part of the Utah Code stating that "the governing body of each taxing entity shall before June 22 of each year: (a) adopt a proposed tax rate, or if the tax rate is not more than the certified tax rate, a final tax rate for the taxing entity; and (b) report the rate and levy . . . to the county auditor of the county in which the taxing entity is located."[31] This provision indicates that a taxing authority levies a tax each year, regardless of whether the tax levied represents a tax increase, a tax decrease, or a tax equivalent to the tax levied the prior year.[32] We therefore conclude that the Resolution does, in fact, levy a tax.

### B.  Subjurisdictional Referenda are Constitutional

¶24    The City next argues that this tax levy is not subject to a referendum because it was enacted by the District, and not the City.[33] Utah Code section 20A-7-601(3) allows residents of a subjurisdiction, such as the District, to challenge laws applicable to that subjurisdiction through a referendum. But the City argues that this provision is unconstitutional because it would limit the number of Draper City citizens who are entitled to vote on the referendum

---

[30] *See* WILLIAM STRUNK JR. & E.B. WHITE, THE ELEMENTS OF STYLE 59 (4th ed. 2000).

[31] UTAH CODE § 59-2-912(1). However, "[i]f the governing body of a taxing entity fails to comply . . . , the auditor of the county . . . shall . . . forward all available documentation to the [State Tax Commission,]. . . .[which] shall hold a hearing on the matter and certify an appropriate tax rate." *Id.* § 59-2-912(3).

[32] Other provisions support this conclusion. *E.g.*, *id.* § 59-2-901 ("Before June 22 of each year the [State Tax Commission] shall determine the rate of state tax to be levied and collected upon the taxable value of all property in the state sufficient to raise the amount of revenue specified by the Legislature for general state purposes.").

[33] In the specific context of levying taxes, we note that neither the constitution nor the applicable statutes allow a special service district to levy property taxes; property taxes for the district must be levied by the county or municipality that established the district. *See* UTAH CONST. art. XI, § 7(1)(b); UTAH CODE § 17D-1-301(3)(c).

to those citizens residing within the District. The City also argues that this provision is inconsistent with the legislative power reserved to the voters in the Utah Constitution, which provides that "[t]he legal voters of any county, city, or town . . . may . . . require any law or ordinance passed by the law making body of the *county, city, or town* to be submitted to the voters thereof."[34]

¶25   We are unpersuaded by the City's constitutional challenge. Under the constitution, "[t]he Legislative power of the State [is] vested in . . . the Legislature . . . [and in] the people."[35] While the constitution specifies that certain legislative power remains in the people, it in no way prohibits the Legislature from delegating to the people additional legislative power. The Legislature may delegate some of that power by statute to the people of a subjurisdiction if it chooses. And the Legislature has done just that. By enacting Utah Code section 20A-7-601(3), the Legislature has delegated legislative power to the residents of subjurisdictions by creating a procedure that allows subjurisdictional legislation to be referred to the voters of the subjurisdiction.[36]  And there is nothing about this delegation of legislative power that is inconsistent with the constitutional provision reserving legislative power to the people.

### C.  A Vote by District Residents Does Not Disenfranchise Non-District Residents of the City

¶26   The City finally argues that non-District residents of the City will be disenfranchised if they are not allowed to vote on this referendum because it may impact the City's finances. We disagree. Because the referendum concerns a tax levied only on the residents of the District, non-District residents will not be directly impacted by the vote. In the event that the voters in the District reject the

---

[34] UTAH CONST. art. VI, § 1(2)(b) (emphasis added).

[35] *Id.* art. VI, § 1(1).

[36] UTAH CODE § 20A-7-601(3). A subjurisdiction is "an area comprised of all precincts and subprecincts in the jurisdiction of a county, city, or town that are subject to a subjurisdictional law." *Id.* § 20A-7-601(3)(a)(i). A subjurisdictional law is a "law or local obligation law passed by a local legislative body that imposes a tax or other payment obligation on property in an area that does not include all precincts and subprecincts under the jurisdiction of the county, city, or town." *Id.* § 20A-7-601(3)(a)(ii). It is undisputed that the District is a subjurisdiction and that the Resolution is a subjurisdictional law.

Cite as: 2014 UT 54

Opinion of the Court

District's property tax levy, the city council will then need to confront how to replace the lost revenue. Any financial impact on the City—whether through additional taxes or reallocation of resources—must first be approved by the city council, which represents all residents of the City. If voters of the City disagree with the legislative action the city council takes in response to any revenue lost as a result of this referendum, they can then seek a referendum to challenge that action.

## CONCLUSION

¶27   The City of Draper improperly rejected the referendum petition for Resolution No. TRSSD 14-02, which levies a tax on property within the Traverse Ridge Special Service District. As a quintessential exercise of legislative power, the decision to levy a tax is referable to the voters. We therefore grant the petition for writ of extraordinary relief.