**2022 UT 23**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

THE COVE AT LITTLE VALLEY HOMEOWNERS ASSOCIATION,
a Utah Non-Profit Corporation,
*Appellant*,

*v.*

TRAVERSE RIDGE SPECIAL SERVICE DISTRICT,
a special service district of Draper City, Utah,
*Appellee*.

No. 20200781
Heard March 14, 2022
Filed June 16, 2022

On Direct Appeal

Third District, Salt Lake
The Honorable Amber M. Mettler
No. 200903518

Attorneys:

Matthew C. Barneck, Salt Lake City, for appellant

P. Bruce Badger, Tanner J. Bean, Salt Lake City, for appellee

JUSTICE PEARCE authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, JUSTICE PETERSEN,
JUDGE CHRISTIANSEN FORSTER, and JUDGE POHLMAN joined.

Having recused himself, ASSOCIATE CHIEF JUSTICE LEE does not
participate herein; COURT OF APPEALS
JUDGE MICHELE M. CHRISTIANSEN FORSTER sat.

Due to his retirement, JUSTICE HIMONAS did not participate
herein; COURT OF APPEALS JUDGE JILL M. POHLMAN sat.

JUSTICE DIANA HAGEN became a member of the Court on
May 18, 2022 after oral argument in the matter and
accordingly did not participate.

JUSTICE PEARCE, opinion of the Court:

## INTRODUCTION

¶1 Members of The Cove at Little Valley Homeowners Association (at times "the Cove" or "the Homeowners Association") pay an assessment to the Traverse Ridge Special Service District (the Service District). The Service District exists to provide certain services to the residents of the district. The Service District, for example, removes snow from some streets in the district. But the Service District does not plow the roads in front of the homes in the Cove because they are private roads. And the Service District takes the position that it is not required to clear snow from private roads. The Cove filed suit claiming that the Service District needed to either stop charging members of the Cove for services it has never provided or start plowing roads (among other things). The Cove also sought a refund of amounts that its members had paid to fund the Service District.

¶2 The Service District moved to dismiss for failure to state a claim. The Service District argued that Draper City Code did not require it to service private roads. The Service District also contended that it is funded by a tax, and because it is funded by a tax, the Homeowners Association needed to bring its challenge in the manner the Utah Tax Code dictates. The district court agreed with the Service District on both counts and dismissed the case.

¶3 On appeal, the Homeowners Association argues that the district court should have found that the Service District needed to maintain the Cove's roads because the Draper City Code requiring private streets to be privately maintained conflicts with state law. It additionally asserts that the agreement the Homeowners Association signed with Draper City, which provides that the Homeowners Association's streets must be privately maintained, cannot be enforced by the Service District because the district was not a party to the contract. We do not address either issue, however, because the Cove did not raise them before the district court and our preservation rules counsel against addressing unpreserved issues.

¶4 The Homeowners Association also contends that the district court erred when it concluded that the assessment its members paid to the Service District is a tax as a matter of law. The Association argues that the district court erred because it relied on dicta in *Mawhinney v. City of Draper* to conclude that this court had already determined that monies paid to the Service District are a tax. 2014

UT 54, 342 P.3d 262. We agree. We accordingly affirm in part, reverse in part, and remand.

## BACKGROUND

¶5 The Cove at Little Valley is a Utah non-profit corporation which represents the interests of homeowners in the eponymous Draper housing community.[1]

¶6 The Traverse Ridge Special Service District is a service district the Draper City Council created "for the purpose of providing transportation, including snow removal, street lighting services, repairing and maintaining roads, sweeping and disposal services." Draper City Counc. Res. 99-82, 1999 Sess. (Utah 1999). Its purpose and boundaries are defined by a set of Draper City Resolutions. *See id.* (creating the Service District); Draper City Counc. Res. 03-05, 2003 Sess. (Utah 2003) (annexing the Cove, among other areas, into the Service District).

¶7 The Cove's residents live within the Service District's boundaries. The Cove's homeowners pay into the Service District's fund. Despite that, the Service District has never provided services to the Cove. Indeed, since the Cove was annexed into the Service District's area, the Cove's homeowners have paid more than $175,000 to the Service District without receiving any benefit.

¶8 The Cove filed suit against the Service District and asserted two causes of action. In the first, the Cove sought an order requiring the Service District provide services to all areas of the district, including the Cove. The Cove alleged that "[t]here [were] no conditions, exceptions or other language in [the Resolutions creating or modifying the Service District] that exempt[ed] The Cove at Little Valley homeowners from receiving full services provided by the [Service District]."

¶9 The second cause of action sought a refund of the payments the Cove's residents had made to the Service District. The Cove

---

[1] This appeal comes to us from a motion to dismiss. "A Rule 12(b)(6) motion to dismiss admits the facts alleged in the complaint but challenges the plaintiff's right to relief based on those facts." *Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 8, 104 P.3d 1226 (citation omitted). There are not many facts relevant to this appeal beyond its procedural history. However, insofar as we do recite facts that the Cove presented to the district court, we stress that these facts are only alleged and have not been proven.

alleged that, under Utah law, a service fee must bear a reasonable relationship to the services provided. The Cove asserted that because the Service District provides its members no services, requiring the Cove's residents to pay any amount is unreasonable.

¶10 The Service District moved to dismiss under Utah Rule of Civil Procedure 12(b)(6). With respect to the Cove's first cause of action, the Service District asserted that it was not required to provide services to the Cove. It explained that because the Cove's streets are private, they must be privately maintained. "[T]he reason is obvious," it explained. "Draper City Code § 17-1-040 requires all private streets in the City to be maintained by the subdivider or other private entity." The Service District argued that because nothing in its organizational resolution "requires [it] to snowplow or maintain private streets," the district court should not compel it to provide those services to the Cove.

¶11 The Service District also took issue with the Cove calling the amounts it received service fees. The Service District argued the monies the Cove residents paid were an *ad valorem* property tax. And it argued that the Utah Property Tax Act sets forth the process to obtain a tax refund. The Service District contended that because the Cove did not bring a refund claim under the Property Tax Act, it had failed to state a claim upon which relief could be granted.

¶12 The Cove opposed the motion by asserting, in part, that the monies paid to the Service District must be categorized as a service fee and not a tax. The Cove argued that the Service District's motion to dismiss the Cove's first cause of action, which requested a declaratory judgment that the Service District must provide the Cove services, should be denied because the motion "mischaracterize[d] the service fees paid to the [Service] District as a 'tax' when the monies paid are properly characterized as 'service fees' under controlling Utah law." "[A]t the very least," the Cove continued, "the legal question of whether the monies paid [to the Service District] are service fees or taxes involves a factual inquiry into the purpose of the levy, which precludes a 12(b)(6) motion to dismiss at this point in the proceedings."

¶13 The Cove then advanced essentially the same argument in regard to its second cause of action, which sought a refund of the money the Cove homeowners paid the Service District. The Cove pressed the district court to deny the motion to dismiss the Cove's second cause of action because the Service District predicated its

argument "entirely on the 'tax' mischaracterization." The Cove concluded that "the Complaint is not a tax protest and the plaintiff homeowners are not tax protesters. Rather, the plaintiff homeowners are tax-paying Utah citizens asserting their rights to special services paid for."

¶14 The district court granted the Service District's motion to dismiss. The court explained that it would dismiss the Cove's first cause of action because the Draper City resolution annexing the Cove into the Service District could not "be read to require the provision of services that are otherwise prohibited by Draper City Code." The court interpreted Draper City Code to require private roads to be privately maintained. Thus, although the Cove had been annexed into the Service District by Draper City Council's Resolution 03-05, it needed to privately maintain its streets because the streets were private. The court rejected the Cove's contention that the City meant to endow the Cove with a right to services when it annexed the neighborhood. The court also noted that the Cove's developer, in the Development Agreement it signed with the City, elected to privatize the development's streets after the annexation had occurred. Based on this analysis, the court concluded that it could not require the Service District to provide services on the Cove's private streets.

¶15 The court dismissed the Cove's second cause of action because it concluded that in another case involving the Service District, the Utah Supreme Court had held that monies paid to the Service District are a tax. *See Mawhinney v. City of Draper*, 2014 UT 54, 342 P.3d 262.

## STANDARD OF REVIEW

¶16 The Cove argues that the district court erred when it granted the Service District's motion to dismiss. "[W]e review the district court's [grant] of [a] motion to dismiss for correctness, granting no deference to the district court's ruling." *St. Jeor v. Kerr Corp.*, 2015 UT 49, ¶ 6, 353 P.3d 137 (third alteration in original) (citation omitted).

## ANALYSIS

### I. THE COVE DID NOT PRESERVE THE ISSUES IT RAISES TO CHALLENGE THE MOTION TO DISMISS THE FIRST CAUSE OF ACTION.

¶17 The Cove's first cause of action asked the court to order the Service District to provide services to its residents. In its complaint, the Cove alleged that under the Utah Special Service District Act and relevant Draper City resolutions, the Service District lacked the legal

ability to deny services to "service-fee paying homeowners" who resided within its boundaries. *See* UTAH CODE §§ 17D-1-101 to -604; Draper City Counc. Res. 99-82, 1999 Sess. (Utah 1999) (creating the Service District); Draper City Counc. Res. 03-05, 2003 Sess. (Utah 2003) (annexing the Cove, among other areas, into the Service District). The Cove further alleged that even if Draper City provided the Service District with authority to deny services, "such authority would be invalid under [the Utah Special Service District Act]." The Cove alleged that the Utah Special Service District Act did not give authority to service districts to deny services to fee-paying homeowners within their boundaries.

¶18 The Service District moved to dismiss this cause of action because the resolutions creating the Service District could not be read to require the provision of services that are otherwise prohibited by Draper City Code. The City's code states, "All private streets shall be . . . maintained by the subdivider or other private entity." DRAPER CITY CODE § 17-1-040. The Service District also argued that the Cove knew, based on its Development Agreement with the City, that it would be required to maintain its own private roads.

¶19 The Cove asked the district court to deny the Service District's motion to dismiss because it improperly relied on information outside the complaint and mischaracterized the Service District's service fee as a tax.[2] The Cove also argued that when Draper City resolution 03-05 annexed the Cove into the Service District, the City created an expectation that the Cove would receive services. Notably, the Cove did not argue before the district court that Draper City Code was invalid to the extent it conflicted with the Utah Special Service District Act.

¶20 The district court concluded that the Draper City resolution that annexed the Cove into the Service District did not require the

---

[2] Before the district court, the Cove argued that the Service District improperly appended several documents, including the Development Agreement, to its motion to dismiss. The district court found that it could review a number of those documents without converting the motion to dismiss into a motion for summary judgment. The Cove does not challenge that decision, so we do not address that question.

Service District to provide services prohibited by Draper City Code. The court acknowledged that the Cove had been annexed into the Service District before it privatized its streets. It concluded that once the streets had been privatized, the Cove had a responsibility to privately maintain them. Accordingly, the court dismissed the Cove's first cause of action.

¶21 The Cove first argues that the district court erred when it relied on Draper City Code section 17-1-040 to reach its decision. The Cove contends that section of the code conflicts with state law and is preempted. The Cove next argues that the court should not have relied on the Development Agreement to conclude that the Cove understood that it needed to privately maintain the roads in the Cove at Little Valley. According to the Cove, the Service District is not a party to that agreement and therefore has "no interest in [the Development Agreement] and no standing to enforce it."

¶22 The Service District contends that we should not reach the merits of those arguments because the Cove failed to preserve the issues before the district court. The Cove responds that it either preserved those issues or that they qualify for an exception to our preservation rules.

¶23 An "appellant must properly preserve an issue in the district court before it will be reviewed on appeal."[3] *O'Dea v. Olea*, 2009 UT 46, ¶ 15, 217 P.3d 704. "An issue is preserved for appeal when it has been 'presented to the district court in such a way that the court has an opportunity to rule on [it].'" *Patterson v. Patterson*, 2011 UT 68, ¶ 12, 266 P.3d 828 (alteration in original) (quoting *In re Adoption of Baby E.Z.*, 2011 UT 38, ¶ 25, 266 P.3d 702). "To provide the court with this opportunity, 'the issue must be specifically raised . . . and must be supported by evidence and relevant legal authority.'" *State in Interest of D.B.*, 2012 UT 65, ¶ 17, 289 P.3d 459 (quoting *Donjuan v. McDermott*, 2011 UT 72, ¶ 20, 266 P.3d 839). Even so, when a party "ha[s] failed to preserve an issue in the [district] court, but seeks to

---

[3] We note that because "[o]ur preservation requirement is self-imposed and is therefore one of prudence rather than jurisdiction[,] . . . we exercise wide discretion when deciding whether to entertain or reject matters that are first raised on appeal. The two primary considerations underlying the [preservation] rule are judicial economy and fairness." *Fort Pierce Indus. Park Phases II, III & IV Owners Ass'n v. Shakespeare*, 2016 UT 28, ¶ 13, 379 P.3d 1218 (alterations in original) (citations omitted).

raise it on appeal[,] . . . the party must argue an exception to preservation." *State v. Johnson*, 2017 UT 76, ¶ 17, 416 P.3d 443.

*A. The Cove Failed to Preserve the Issue of Whether
Draper City Code Section 17-2-040 Conflicts with State Law*

¶24 The Cove first argues that it preserved the issue it wants to press on appeal because, contrary to the Service District's argument, the Cove raised the conflict between Draper City Code section 17-1-040 and state law in the district court. As evidence of this, the Cove points to several sentences in its complaint that reference Draper City Code. The Cove did not, however, even mention these paragraphs of its complaint in the opposition to the motion to dismiss, let alone build an argument around them. The Cove nevertheless argues that the reference in the complaint was sufficient to preserve the issue for appeal.[4] That is not how preservation works.

¶25 To preserve an issue, a party must bring the issue to the district court in a manner that, at a minimum, alerts the district court that it is being asked to decide the issue. The Cove points to nothing in the record, and our own review reveals nothing, that suggests the district court would have understood that the Cove believed that Draper City Code did not control because it conflicts with state law. That is simply nowhere to be found in the Cove's opposition to the motion to dismiss. The suggestion that a reference to Draper City Code in the complaint somehow raised the issue of state law preemption to defeat a motion to dismiss does not hold water.

¶26 The Cove next argues that even if that issue is unpreserved, we should still address it. It claims that even if the Cove did not otherwise satisfy the preservation rule, the district court took up the question, thereby freeing the Cove from the need to preserve the issue. The Cove relies on our decision in *Fort Pierce* for support. But this case presents a much different situation than *Fort Pierce*.

¶27 In *Fort Pierce*, we said that "the district court's decision to take up [a] question . . . conclusively overcame any objection that the issue was not preserved for appeal." *Fort Pierce Indus. Park Phases II, III & IV Owners Ass'n v. Shakespeare*, 2016 UT 28, ¶ 13, 379 P.3d 1218.

---

[4] We note that the Cove's counsel on appeal did not represent the Cove in the district court.

In that case, we considered whether a party had properly preserved the question of whether restrictive covenants were disfavored. *Id.* ¶ 12. Neither party had argued that restrictive covenants were disfavored. But that did not stop the district court from concluding that that "restrictive covenants . . . are disfavored and should be 'strictly construed in favor of the free and unrestricted use of property.'" *Id.* ¶ 9. Because the court had explicitly considered the specific issue of whether restrictive covenants were disfavored, we concluded that considering that same question on appeal would not compromise the court's interest in promoting judicial economy nor would it be unfair. *Id.* ¶ 13.

¶28 The Cove tries to deploy *Fort Pierce*'s logic to this matter. It argues that because the district court decided that Draper City Code prohibits the Service District from providing services to the Cove's residents, the issue regarding the possible preemptive effect of state law has been preserved. The problem with the Cove's argument should be obvious. In *Fort Pierce,* the district court ruled on the precise issue that the appellant wanted to assert on appeal. Here, no party raised the issue the Cove wants to press, and the district court did not rule on it. It simply ruled on the ultimate issue before it. Defining the issue to be preserved at the level of generality that the Cove does here would all but erase the preservation requirement.

¶29 The preservation rule's rationale motivates this decision. To promote fairness and conserve judicial resources, a party must raise the issue in a manner that notifies the district court that it is being asked to rule on the issue and allows the opposing party to address it. If a party fails to present an issue to the district court, but the district court acts as if it had by sua sponte analyzing and ruling on that issue, we promote neither fairness nor judicial economy by refusing to allow a party to challenge the court's decision on appeal. But, for this circumstance to occur, the district court actually needs to address the issue the party wants to raise on appeal. That did not happen here.

*B. The Cove Did Not Preserve the Issue of Whether the Service District Is a Party in Interest to the Development Agreement*

¶30 The Cove next argues that it should be entitled to raise the issue that the Service District has no interest in the Development Agreement even if it did not raise that issue below.

¶31 The Cove claims that it should be allowed to raise its argument because the district court concluded that the Service District could enforce the Development Agreement. However, the lower court never made such a determination. At most, the district

court tangentially referenced the Development Agreement at the hearing on the motion to dismiss. But it never said that the Service District could enforce the Development Agreement against the Cove.

¶32 The Cove asserts that even if the issue was not preserved, it has a work-around. The Cove contends that the Service District does not have standing to enforce the Development Agreement. The Cove notes our case law that standing can be asserted at any time and argues that it can therefore raise this issue even if it did not give the district court a swing at it. There are several problems with the Cove's analysis.

¶33 First, the Cove misunderstands the type of standing that need not be preserved and can be raised at any time. Only standing which calls into question a court's subject matter jurisdiction can be raised at any point in the litigation. This is because the court has a duty to ensure that it has subject matter jurisdiction over the cases in front of it. *See, e.g.*, *Matter of Adoption of B.B.*, 2017 UT 59, ¶ 102, 417 P.3d 1. If a court determines that it lacks subject matter jurisdiction, it "retains only the authority to dismiss the action." *Nevares v. Adoptive Couple*, 2016 UT 39, ¶ 22, 384 P.3d 213 (citation omitted).

¶34 The Cove wants to challenge the Service District's ability to use the Development Agreement to defend itself against claims the Cove brought against it. And we sometimes speak of a party's ability to enforce a contract as "standing" to enforce an agreement. *See, e.g.*, *Orlando Millenia, LC v. United Title Servs. of Utah, Inc.*, 2015 UT 55, ¶ 37, 355 P.3d 965 ("In contract law, a third party has standing to sue if it is an intended, and not merely an incidental, beneficiary." (emphasis omitted)); *Harper v. Great Salt Lake Council, Inc.*, 1999 UT 34, ¶ 20, 976 P.2d 1213 ("Harper has no standing to object to BSA and Mt. Jordan's modification of a term of the First Refusal Agreement because he had no cognizable interest in that agreement."); *see also Hillcrest Inv. v. Sandy City*, 2010 UT App 201, ¶ 20, 238 P.3d 1067 ("[E]ven if Hillcrest had standing to enforce the Contract generally, Hillcrest was not entitled to the relief it had requested . . . ."). But, even if we were to decide that the Service District could not enforce the Development Agreement, we would not lose subject matter jurisdiction to adjudicate the claims the Cove brought against the Service District.

¶35 Because the "standing" issue the Cove seeks to advance on appeal does not implicate the species of standing that would deprive this court of subject matter jurisdiction, the Cove needed to raise it

below to preserve it. The Cove never argued that the Service District could not rely on the Development Agreement, and that issue is therefore not preserved for appeal.

### C. There Are Serious Questions About When Plain Error Can Be Asserted in Civil Cases. In Any Event, the District Court Did Not Plainly Err

¶36 The Cove last argues that we ought to consider its unpreserved issues because the district court committed plain error when it dismissed the first cause of action. Before we turn to the merits of the Cove's contention, we pause to acknowledge a question about a party's ability to assert plain error in a civil matter that the court of appeals expertly analyzed in *Kelly v. Timber Lakes Prop. Owners Ass'n*, 2022 UT App 23, 507 P.3d 357.

¶37 The court of appeals considered if and when the plain error doctrine should be applied in a civil case. To help answer this question, the court of appeals traced the plain error doctrine's evolution. *Id.* ¶¶ 35–44. The court of appeals correctly noted that we first applied the plain error doctrine in a capital case, *State v. Stenback*, 2 P.2d 1050 (Utah 1931). *Kelly*, 2022 UT App 23, ¶ 35. The *Stenback* court reasoned that in capital cases, the court "may and should sua sponte consider manifest and prejudicial errors which are neither assigned nor argued." 2 P.2d at 1056. It concluded that "[a]n error which is so manifest and so calculated to be prejudicial to the rights of the defendant as was the refusal of the court to permit him to testify as to whether he did or did not intend to kill the deceased may not justly be brushed aside." *Id.* at 1057.

¶38 A few years later, this court expanded the doctrine to include "cases of grave and serious charged offenses[,] . . . convictions of long terms of imprisonment, [and] cases involving the life and liberty of the citizen." *State v. Cobo*, 60 P.2d 952, 958 (Utah 1936), *criticized by State v. Mitchell*, 278 P.2d 618 (Utah 1955). In such cases, we claimed for ourselves the power to intervene "when palpable error is made to appear on the face of the record and to the manifest prejudice of the accused" even when the issue has not been preserved. *Id.*

¶39 Although the doctrine was initially cabined to serious crimes and significant punishments, it eventually expanded to include all criminal offenses. *See, e.g., State v. Waid*, 67 P.2d 647, 652 (Utah 1937) (holding that even a conviction of "simple assault" "entails the loss of friends and the respect of fellows," and therefore the court "should notice the error"). And in the past seventy-plus years, we have applied the plain error doctrine a number of times to a wide

variety of criminal offenses. *See, e.g., State v. Verde*, 770 P.2d 116, 117, 122–23 (Utah 1989) (applying the plain error doctrine to the admission of prejudicial evidence in a case involving the sale of a child); *State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993), (applying the plain error doctrine to jury instructions in a manslaughter and kidnapping case), *abrogated on other grounds by State v. Silva*, 2019 UT 36, 456 P.3d 718; *State v. Ross*, 2007 UT 89, ¶¶ 33, 40, 53, 174 P.3d 628, (assessing whether plain error existed when a court failed to merge an aggravated murder charge with an attempted aggravated murder charge, impaneled an anonymous jury, and allowed potentially prejudicial remarks in the prosecution's closing statement), *abrogated by State v. Hummel*, 2017 UT 19, 393 P.3d 314; *State v. Marquina*, 2020 UT 66, ¶¶ 1, 30–33, 478 P.3d 37 (analyzing whether a juror sleeping during court proceedings constituted plain error in an aggravated robbery case). Plain error is now firmly entrenched in our criminal law jurisprudence.

¶40 In contrast to our willingness to employ plain error in criminal cases, we have questioned whether it should apply in the civil context. *See In re J.A.L.*, 2022 UT 12, ¶ 12 n.3, 506 P.3d 606 ("[T]his court has not decided whether plain error applies in civil cases."); *see also Utah Stream Access Coal. v. Orange St. Dev.*, 2017 UT 82, ¶ 14 n.2, 416 P.3d 553 ("[T]here is an ongoing debate about the propriety of civil plain error review"). There is good reason to question whether a party to a civil case should be able to address an unpreserved error on appeal, even if it qualifies as obvious. As the court of appeals explained, "the economic and property interests that are typically the subject of civil cases are not as fundamental as the liberty interests at stake in criminal cases." *Kelly*, 2022 UT App 23, ¶ 42. Moreover, the availability of malpractice remedies against attorneys who miss obvious arguments might be a fairer fix than allowing a party to raise an unpreserved error on appeal and drag an opposing party, who may bear no responsibility for the error, through the cost of an appeal and renewed district court proceedings.[5]

---

[5] That having been said, care must be taken to not paint with too broad a brush. There may be civil cases where the interests implicated —parental termination cases, for example – present a compelling argument for plain error review. *See Kelly*, 2022 UT App 23, ¶ 42 n.10. In these cases, a malpractice action and the potential for

(continued . . .)

¶41 Despite these apparent misgivings, we, and the court of appeals, have nevertheless applied plain error in some civil cases. *See, e.g.*, *Utah Stream Access Coal.*, 2017 UT 82, ¶ 14; *Heslop v. Bank of Utah*, 839 P.2d 828, 839–40 (Utah 1992); *Classic Cabinets, Inc. v. All Am. Life Ins. Co.*, 1999 UT App 88, ¶ 17, 978 P.2d 465; *Larsen v. Johnson*, 958 P.2d 953, 956 (Utah Ct. App. 1998); *Davis v. Grand Cnty. Serv. Area*, 905 P.2d 888, 892–94 (Utah Ct. App. 1995), *abrogated on other grounds* by *Gillett v. Price*, 2006 UT 24, 135 P.3d 861. But, as the court of appeals observed, it appears to have been applied in cases in which the parties did not question the validity of the doctrine's application in the civil context. *Kelly*, 2022 UT App 23, ¶ 40.

¶42 Although we have expressed skepticism about plain error review of unpreserved issues in civil cases, elements of the plain error doctrine have been codified into the rules that apply in civil cases. *See Kelly*, 2022 UT App 23, ¶ 37. Utah Rule of Evidence 103 allows a court to "take notice of a plain error [within an evidentiary holding] affecting a substantial right, even if the claim of error was not properly preserved." UTAH R. EVID. 103(e). And Utah Rule of Civil Procedure 51 instructs that jury instructions can be deemed error even without a voiced objection if the instruction would lead to "a manifest injustice." UTAH R. CIV. P. 51(f).

¶43 In *Kelly*, the court of appeals ultimately concluded that "unless expressly authorized by rule, the plain error exception to our preservation rule does not properly extend to ordinary civil appeals." *Kelly*, 2022 UT App 23, ¶ 41 (citations omitted). We have not been asked to review that conclusion. As we noted above, there may be categories of civil cases where the interests at stake and the inadequacy of money damages militate in favor of plain error review.

¶44 The parties in this case do not address the viability of the plain error exception in civil cases. This places us in a disadvantageous position to make broad pronouncements about the doctrine. This means that we once again voice our skepticism about whether the plain error exception to our preservation rule should be invoked in many civil cases unless expressly authorized by rule. And we leave the broader question for a case in which it is briefed and before us. This also means that we once again find ourselves saying

---

economic damages will not be an adequate remedy for a plain error that results in a loss of parental rights.

that even if plain error is a thing in civil cases like this one, the specific complained-of error fails to meet the definition of plain.

¶45 The Cove argues that the lower court's decision is "contrary to the established legal authority [the Cove] cites regarding a conflict between a city ordinance and a state statute." It further argues that this error should have been obvious to the trial court because the cases the Cove cites in its briefing to us are "'clear' and were 'plainly settled' at the time of the district court's decision in September 2020." Stated differently, the Cove contends that the district court plainly erred because it should have known, without any party bringing the issue to its attention, that the Utah Special Service District preempted a provision of Draper City Code.

¶46 "For an error to be obvious to the trial court, the party arguing for the exception to preservation must show that the law governing the error was clear or plainly settled at the time the alleged error was made." *Johnson*, 2017 UT 76, ¶ 21 (citations omitted) (internal quotation marks omitted).

¶47 The Cove cites case law which demonstrates that local ordinances cannot conflict with state law. *See S. Salt Lake City v. Maese*, 2019 UT 58, ¶ 75, 450 P.3d 1092 ("City ordinances can criminalize the same conduct as a state statute, so long as the ordinances do not conflict with a state statute."); *Hansen v. Eyre*, 2005 UT 29, ¶ 15, 116 P.3d 290 ("It is well established that, where a city ordinance is in conflict with a state statute, the ordinance is invalid at its inception."). That is true as far as it goes. What the Cove has not demonstrated is that it would have been plain error for the district court to fail to realize that Draper City Code conflicts with the Utah Special Service Act. Indeed, the Cove has failed to meet its burden of even demonstrating the correctness of the legal conclusion embedded in that argument.

¶48 The Cove did not preserve the issues it wants to raise on appeal to argue that the district court erred when it dismissed the first cause of action. No exception to the preservation rule exists that would allow the Cove to nevertheless assert them. Without a viable challenge to the district court's decision to dismiss the first cause of action, we affirm the district court's grant of the motion to dismiss that claim.

## II. THE DISTRICT COURT ERRED WHEN IT DISMISSED THE COVE'S SECOND CAUSE OF ACTION

¶49 The district court granted the Service District's motion to dismiss the Cove's second cause of action requesting a refund of the monies paid to the Service District. By way of reminder, the Cove asserts that the monies its members pay to the Service District are best characterized as a service fee. The Service District argued in its motion to dismiss that the assessment was a tax. That matters because, as the Service District argues, if the assessment is a tax, it must be challenged under the Utah Tax Act. That is something the Cove did not do. The district court granted the motion because it concluded that this court had considered this precise question and determined that the levy is a tax in *Mawhinney v. City of Draper*, 2014 UT 54, 342 P.3d 262.[6]

¶50 The Cove argues that this was error because the part of *Mawhinney* the district court relied on is dicta. According to the Cove, this court simply took it as a given that the levy was a tax because that is what the parties called it and the tax/fee question was not at issue in that case. The Cove contends that as a result, this court never analyzed whether the monies paid to the Service District were a tax or a service fee. We agree.

¶51 In *Mawhinney*, a number of Draper residents, upset that the Draper City Council had imposed the levy, gathered enough signatures to refer the question of whether the City should collect the levy to the voters. *Id.* ¶ 4. Draper City refused to put the issue on the ballot, reasoning that the imposition of the fee was a non-referable administrative action. *Id.* The residents filed a petition for extraordinary relief. *Id.* ¶¶ 4–6.

¶52 The referendum proponents appeared pro se in front of this court. *Id.* ¶ 1. In their briefing and arguments, the proponents characterized the levy as a tax, and argued that the City had wielded legislative power when it voted on the resolution approving that tax. *Id.* ¶¶ 7, 15. Draper City also called the levy a tax but argued that the levy was nothing more than the administration of an already approved tax. *Id.* ¶ 2. Draper City argued that because administrative actions are not the proper subject of referenda, the

---

[6] To the extent it is not clear, we underscore that the funding mechanism *Mawhinney* considered is the same funding mechanism at issue in this matter.

citizens had no right or ability to place the issue to the voters. *Id.* We ultimately held that the resolution approving the levy was the product of legislative power and subject to referendum. *Id.* ¶ 15.

¶53 The district court read this and concluded that we had definitively determined that the assessment was a tax. But we did not. A careful read of *Mawhinney* reveals that we never questioned the way the parties had characterized the levy. Nor did we need to because the distinction between a tax and a fee was not necessary to the outcome of the case. This means that our use of the word "tax" was dicta and does not control the outcome of the Cove's motion to dismiss.

¶54 The distinction between a holding and dictum depends on "whether the solution of the particular point was more or less necessary to determining the issues involved in the case." BRYAN A. GARNER ET AL., THE LAW OF JUDICIAL PRECEDENT 51 (2016).

¶55 The issue presented in *Mawhinney* centered on whether the funding mechanism—whatever label we might put on it—was legislative or administrative. The answer to that question would not have been impacted by whether Draper City called it a tax or a service fee. The parties never asked us to consider whether the funds were generated by taxes or fees. We simply followed the parties' lead in calling it a tax and the district court, quite understandably, followed ours. Unfortunately, that resulted in the district court erring here when it concluded that the Service District is funded by a tax as a matter of law.[7]

¶56 We have not yet had the opportunity to consider whether the Service District is funded by taxes or fees. It is therefore an open

---

[7] We note that the district court also suggested that its conclusion that "the levy is, in fact, a tax is further supported or confirmed by the language in section 4 of [Resolution 03-05], which makes clear that the territory annexed by the resolution shall be subject to taxation [for] purposes of the Special Service District." However, nothing in the district court's order or its language at the hearing on the motion to dismiss suggests that this was an independent reason for finding that the Service District was funded by a tax. Instead, it was merely presented as a fact that reaffirmed the district court's reading of *Mawhinney.* We offer no opinion on the district court's reading of Resolution 03-05.

question that the Cove is entitled to litigate before the district court. We therefore reverse and remand.

## CONCLUSION

¶57 The Cove at Little Valley failed to preserve the issues it wanted to raise to argue that the district court erred in dismissing its first cause of action. We therefore have no basis to overturn the district court's conclusion. We agree, however, with the Cove that the district court erred when it relied on *Mawhinney* to find that the Service District was funded by a tax. *Mawhinney* does not answer that question and the court's grant of the motion to dismiss was in error. Accordingly, we affirm the district court's dismissal of the Cove's first cause of action but reverse its dismissal of the second. We remand the case for further proceedings.

———————